598 F.2d 1069
 Darwin DeBROWN and Barry DeBrown, Plaintiffs-Appellants,
v.
James L. TRAINOR, Director, Illinois Department of Public
Aid, Stephanie Releford, Director, Illinois Food Stamp
Program, and the Illinois Department of Public Aid, a State
Agency, Defendants-Appellees.
 No. 76-1628.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 15, 1977.
Decided April 27, 1979.*
 
 James D. Weill, Wendy Meltzer, Nelson A. Soltman, Chicago, Ill., for plaintiffs-appellants.
 John Whitenack, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and PELL and TONE, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a dismissal of the plaintiffs' class action complaint as moot. We reverse the decision of the district court.
 
 
 2
 There are two sets of facts that are critical for an understanding of the issues raised in this appeal. The first is the rather complex set of facts alleged by the complaint. The second is the much more straightforward chronology of the proceedings and events below that led to the dismissal of the complaint.
 
 I. THE ALLEGATIONS
 A. Food Stamps
 
 3
 At the time the complaint was filed the Illinois Department of Public Aid (IDPA) classified food stamp recipients into two categories, "assistance" households and "non-assistance" households. An "assistance" household was one in which each member of the household received some form of cash assistance. The DeBrowns, plaintiffs here, were an "assistance" household until July 1, 1975. A "non-assistance" household was any other household. The plaintiffs became a "non-assistance" household on July 1, 1975, because, although the notice they received from the agency did not say so, their oldest son, Barry, had become 18 and was therefore to be excluded from the family AFDC grant. The complaint alleges that in May, 1975 the DeBrowns received a notice from the IDPA informing them that because of the change in their household status, their food stamp benefits would be terminated on July 1, 1975 and that they would have to reapply if they wished to continue to participate in the food stamp program. The food stamp benefits were terminated as scheduled. The DeBrowns reapplied but had not yet received benefits when the complaint was filed on August 1, 1975. The complaint alleges that this "gap" in food stamp benefits is the result of the defendants' policy and practice of terminating benefits whenever there is a change in household status, regardless of whether or not, as in the DeBrowns' case, the IDPA knows that the family will continue to be eligible for the program. The plaintiffs allege that this procedure violates several constitutional and statutory requirements and seek compensatory, injunctive, and declaratory relief for themselves and for a class they seek to represent of all current or future public assistance households who have been, or may in the future, be subject to a similar termination because of a change in the classification of the household.
 
 B. Medicaid
 
 4
 On July 1, 1975, Barry DeBrown's medicaid benefits were also terminated, allegedly without notice of any kind. The plaintiffs assert that this occurred pursuant to the defendants' policy and practice of automatically terminating the medicaid benefits of any dependent child when that child is terminated from the AFDC family grant because he or she has turned 18 and is not attending school. This policy and practice is alleged to be in violation of the due process clause of the Fourteenth Amendment and applicable federal law and regulations, which provide eligibility criteria for medicaid benefits which are somewhat less restrictive than the Illinois procedures applied to AFDC eligibility, and under which Barry DeBrown would have remained eligible for medicaid benefits. Barry DeBrown seeks injunctive and declaratory relief on his own behalf and as the representative of a class of dependent children, age 18 to 20, whose medicaid benefits are terminated because they are no longer eligible for AFDC, but who nonetheless remain eligible for medicaid.
 
 II. THE PROCEEDINGS BELOW
 
 5
 The plaintiffs received notice in the end of May, 1975 that their food stamp benefits were being terminated on July 1, 1975. On that date both their food stamps and Barry DeBrown's medicaid coverage were terminated. On July 7, 1975 the DeBrowns reapplied for food stamps and applied for medicaid for Barry. As of August 1, 1975, the date the complaint was filed, the DeBrowns had not yet received their July food stamps and Barry had not received a medicaid card.
 
 
 6
 On August 6, 1975, the plaintiffs filed a motion for class certification. On August 8, 1975, plaintiffs filed a motion for a temporary restraining order and/or preliminary injunction. On the same day the defendants restored the DeBrowns' eligibility for food stamps; granted retroactive food stamp benefits for July; and restored Barry's medicaid benefits. The plaintiffs then withdrew their application for preliminary relief. On November 13, 1975, the defendants moved to dismiss the complaint for, Inter alia, mootness. On February 17, 1976 the district court granted the motion to dismiss, finding that the court lacked jurisdiction because the defendants' reinstatement of benefits to the plaintiffs ended the controversy between the parties. On April 28, 1976, the district court entered another order denying the plaintiffs' motion to vacate, alter, or amend the February judgment, specifically holding that the complaint was not within the "capable of repetition, yet evading review" exception to the mootness doctrine. This appeal followed.
 
 III. DISCUSSION
 
 7
 The "capable of repetition, yet evading review" exception to the mootness doctrine is well established. Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In concluding that the exception was not applicable to this case, the district court considered neither the possibility that the DeBrowns could again be subject to a "gap" in food stamp benefits, nor the fact that a motion for class certification was pending when the defendants provided the benefits sought by the named plaintiffs. Instead, the district court concluded that the exception applied only to cases where the case is mooted by the mere passage of time, and thus could not be applied to this case, which was mooted by the defendants' remedial actions.
 
 
 8
 First, we note that the plaintiff's claims are ones that necessarily would be mooted by the mere passage of time, regardless of whether or not the defendants took specific remedial actions. The claims do not allege that eligible recipients are completely cut off from benefits but rather that they are subject to an unlawful "gap" in service. Presumably, the DeBrowns' applications for food stamps for themselves and medicaid assistance for Barry would have been approved shortly regardless of whether or not the lawsuit had been filed. Under those circumstances it is irrelevant that in this case the defendants took specific action to approve the application rather than wait for the administrative procedure to run its usual course.
 
 
 9
 Second, it is clear that these claims, if true, are ones "capable of repetition, yet evading review." The DeBrowns may again be reclassified as an "assistance" household and, after that, as a "non-assistance" household once more.[1]-[2] Furthermore, if the plaintiffs' allegations are true, it is certain that other persons similarly situated will face similar "gaps" in services. The Supreme Court's language in Gerstein v. Pugh is directly on point:
 
 
 10
 At oral argument counsel informed us that the named respondents have been convicted. Their pretrial detention therefore has ended. This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. See Sosna v. Iowa, 419 U.S. 393 (, 95 S.Ct. 553, 42 L.Ed.2d 532) (1975). Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."
 
 
 11
 At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the district court certified the class. Such a showing ordinarily would be required to avoid mootness under Sosna. But this case is a suitable exception to that requirement. See Sosna, supra, at n. 11 (, 95 S.Ct. at 559 n. 11); Cf. Rivera v. Freeman, 469 F.2d 1159, 1162-1163 (CA9 1972) . . . It is by no means certain that any given individual, named as a plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case. 420 U.S. 110 n. 11, 95 S.Ct. at 861.
 
 
 12
 Finally, although it is not necessary to our holding here, we note, in the alternative, that this court has recently held that remedial actions taken by the defendants while a motion for class certification is pending do not deprive the court of jurisdiction to hear and decide the motion for class certification, regardless of whether or not the action is one that otherwise would fall into the category of "capable of repetition, yet evading review." Susman v. Lincoln American Corp., 587 F.2d 866 (1978), Petition for cert. filed 47 U.S.L.W. 3520 (Jan. 6, 1979) (No. 78-1169). See also White v. Mathews, 559 F.2d 852, 857 (2nd Cir.), Cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).
 
 IV. CONCLUSION
 
 13
 The defendants' remedial action did not deprive the district court of jurisdiction in this case. The district court erred in holding otherwise. The judgment appealed from is REVERSED.[3]
 
 
 
 *
 This appeal was originally decided by unreported order on April 3, 1979. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion
 
 
 [1]
 If Barry were to leave his parents' home while his siblings were still minors the family would again become an "assistance" household. As younger siblings became 18, however, the DeBrowns could find themselves in a situation identical to the one that led to the filing of this complaint
 
 
 [2]
 There does not seem to be any possibility that Barry will again suffer the denial of medicaid benefits complained of here. He will only turn 18 once. But, in light of the holding in Gerstein, this fact does not, by itself, mean that the action is moot
 
 
 [3]
 The defendants have alleged that the gap in services suffered by the DeBrowns was the result of administrative error, rather than department policy. If that is the case it will doubtless come out during the motion for class certification. But there is not now any evidence on that question and Judge McGarr did not rule on that basis, so we do not address that possibility here. It has also now been three years since the district court decision and it is possible that the action may now be moot for other reasons. We leave all these questions to the sound discretion of the district court, holding only that the action was not mooted solely because of the remedial action taken by the defendants