HOUSING AUTHORITY OF THE CITY
OF JERSEY CITY, Plaintiff,

v.

Sheila JACKSON, Defendant/Third
Party Plaintiff,

v.

Jack KEMP, in his capacity as Secretary
of the United States Department of
Housing and Urban Development,
Third Party Defendant.

Civ. No. 90–1410.

United States District Court,
D. New Jersey.

Oct. 29, 1990.

Gregory G. Diebold, Claudette L. St. Romain, Hudson County Legal Services Corp., Jersey City, N.J., for Sheila Jackson, defendant/third party plaintiff.

Michael Chertoff, U.S. Atty. by Susan C. Cassell, Asst. U.S. Atty., Deputy Chief, Civ. Div., Newark, N.J., for Jack Kemp, Secretary of the U.S. Dept. of Housing and Urban Development, third party defendant.

Charles Centinaro, Shaljian, Cammarata, O'Connor & Messano, Jersey City, N.J., for the Housing Authority of the City of Jersey City, plaintiff.

## OPINION

DEBEVOISE, District Judge.

■ This case raises the question of whether a public housing tenant must be afforded an administrative grievance hearing before eviction proceedings may be brought against her in state court. The tenant in this case has brought a counter-

claim and a third party complaint challenging a determination of the Secretary of the United States Department of Housing and Urban Development, which allows housing authorities in New Jersey to exclude from their grievance hearing procedures any evictions brought in the Special Civil Part of the New Jersey Superior Court. The Secretary and the housing authority which brought the eviction action have moved for summary judgment dismissing the counterclaim and third party complaint, and the tenant has crossmoved for summary judgment. For the reasons explained below, I find that the Secretary's determination was erroneous, and that housing authorities must afford their tenants administrative grievance hearings before instituting eviction proceedings against them in the Special Civil Part. Therefore, the Secretary's and the housing authority's motions for summary judgment are denied, and the tenant's cross-motion for summary judgment is granted.

## PROCEDURAL AND FACTUAL BACKGROUND

This case began in New Jersey state court, specifically, in the Superior Court, Law Division: Special Civil Part ("Special Civil Part"). Plaintiff, the Housing Authority of the City of Jersey City (the "Housing Authority"), brought a summary eviction proceeding against one of its tenants, defendant Sheila Jackson ("Jackson").[1] Jackson wanted to file a counterclaim, as well as join a third party to the action, both of which are prohibited in summary landlord-tenant proceedings. *See* N.J.Ct.R. 6:3–4. Therefore, Jackson moved, successfully, to transfer the proceedings to the Superior Court, Law Division ("Law Division"). Once the case was transferred, Jackson served her answer, together with a two count counterclaim, on the Housing Authority. In addition, Jack-

---

1. In 1983, the "jurisdiction, functions, powers and duties" of the county district courts in New Jersey were transferred to the Superior Court. *See* N.J.S.A. 2A:4–3c. The New Jersey Supreme Court, by an order dated December 13, 1983, created the Special Civil Part of the Superior Court, and summary landlord-tenant actions

were expressly made cognizable in the Special Civil Part. Part VI of the Rules Governing the Courts, which previously applied to the county district courts, was made applicable to the Special Civil Part. *See Carr v. Johnson,* 211 N.J.Super. 341, 346 n. 1, 511 A.2d 1208 (App.Div.1986).

son brought a two count third party complaint against the Secretary of the United States Department of Housing and Urban Development (the "Secretary"). Thereafter, the Secretary removed the entire proceeding to this court, pursuant to 28 U.S.C. § 1441.

The Housing Authority and the Secretary each moved for summary judgment, seeking dismissal of Jackson's counterclaim and third party complaint, respectively, and Jackson cross-moved for summary judgment.[2]

The central dispute in this case is over the circumstances under which a public housing tenant, such as Jackson, is entitled to a prior administrative grievance hearing before summary eviction proceedings may be brought against her in court. It is agreed that Jackson was not afforded such a hearing in this case, and that if she is entitled to such a hearing, the eviction action was improperly brought.

The availability of a prior administrative grievance hearing is important for at least two reasons. First, administrative hearings can "avoid costly and divisive public housing litigation by channeling tenant-management disputes into a decentralized, informal, and relatively non-adversarial administrative process." *Samuels v. District of Columbia*, 770 F.2d 184, 189 (D.C.Cir. 1985). Second, because most public housing tenants lack the specialized training of a lawyer,[3] they may find the formality and complexity of judicial proceedings somewhat daunting, and may best be able to defend themselves in the context of relatively informal and flexible administrative proceedings. *Cf. Escalera v. New York City Housing Authority*, 425 F.2d 853, 864 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970) ("cost of defending in court and the hazards envisioned by a public housing tenant in refusing to pay rent, would probably dissuade all but the boldest tenant from" defending in court against housing authority suit for rent).

The provision for grievance hearings dates back to the 1960's. After the Supreme Court granted certiorari to consider a challenge to a housing authority's failure to provide a preeviction hearing, the Department of Housing and Urban Development ("HUD") issued a directive to local housing authorities, requiring them to comply with certain procedures before evicting their tenants. *See Thorpe v. Housing Authority of Durham*, 386 U.S. 670, 672, 87 S.Ct. 1244, 1245, 18 L.Ed.2d 394 (1967). This directive was subsequently upheld against challenge, as an appropriate means to further the goal of providing " 'a decent home and a suitable living environment for every American family.' " *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969) (quoting 42 U.S.C. § 1441). In 1971, HUD issued further directives, specifically requiring an administrative grievance hearing regarding any planned adverse action taken by a housing authority. *See* Circular RHM 7465.9 at 2 (Feb. 22, 1971), Statutory Addendum at 22. Again, these directives were upheld over a challenge that HUD had exceeded its authority. *See Omaha Housing Authority v. United States Housing Authority*, 468 F.2d 1 (8th Cir.1972), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973). In 1975, HUD readopted and published these regulations in the Code of Federal Regulations.

The current version of the regulations, codified at 24 C.F.R. Part 966, requires each housing authority to establish and implement a grievance process that provides tenants with a hearing if they dispute any action or inaction of the housing authority concerning lease provisions or local or federal regulations. *See* 24 C.F.R. § 966.50. The grievance procedure mandated by the regulations includes an informal settlement conference, *id.*, § 966.54, and, failing settlement, an informal proceeding before an impartial hearing officer. *Id.*, § 966.55(b). Pursuant to the regulations, the grievance

---

**2.** Jackson conceded, however, that the second count of her third party complaint should be dismissed as moot.

**3.** The court may take judicial notice of the fact that the overwhelming majority of tenants sued in summary eviction proceedings appear *pro se.*

procedure must provide "the basic safe-guards of due process which shall include:"

(1) The opportunity to examine before the hearing and, at the expense of the complainant, to copy all documents, records and regulations of the PHA [public housing agency] that are relevant to the hearing. Any document not so made available after request therefor by the complainant may not be relied on by the PHA at the hearing;

(2) The right to be represented by counsel or other person chosen as his or her representative;

(3) The right to a private hearing unless the complainant requests a public hearing;

(4) The right to present evidence and arguments in support of his or her complaint, to controvert evidence relied on by the PHA or project management, and to confront and cross-examine all witnesses on whose testimony or information the PHA or project management relies; and

(5) A decision based solely and exclusively upon the facts presented at the hearing.

*Id.,* § 966.56(b).

Finally, the regulations provide that a housing authority may exclude grievance hearings for a limited class of evictions, *see id.,* § 966.51(a), but *only* "in those jurisdictions which require that, prior to eviction, a tenant be given a hearing in court containing the elements of due process," where "the following procedural safeguards are required:"

(1) Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;

(2) Opportunity for the tenant to examine all relevant documents, records and regulations of the PHA prior to the trial for the purpose of preparing a defense;

(3) Right of the tenant to be represented by counsel;

(4) Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any

affirmative legal or equitable defense which the tenant may have;

(5) A decision on the merits.

*Id.,* § 966.53(c).

In 1982, however, the Secretary proposed to restrict the availability of grievance procedures to disputes concerning rent calculation and tenant selection. *See* 47 Fed.Reg. 55,689, 55,692 (1982). In response, Congress amended the Housing Act to require housing authorities to maintain grievance procedures regarding *all* tenant disputes.

The Secretary shall by regulation require each public housing agency receiving assistance under this chapter to establish and implement an administrative grievance procedure under which tenants will—

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (*l*) of this section;

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf;

(6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k). However, Congress also provided that:

An agency may exclude from its procedure any grievance concerning an eviction or termination of tenancy in any jurisdiction which requires that, prior to eviction, a tenant be given a hearing in court which the Secretary determines provides the basic elements of due process.

*Id.* Congress specifically contemplated that HUD would implement this provision by retaining its present grievance procedure regulations. *See* H.R.Rep. No. 123,

98th Cong., 1st Sess. 35–36 (1983). Thus, the standards for determining whether a court proceeding satisfies the "basic elements of due process," are those set forth in the HUD regulations. *See* 24 C.F.R. § 966.53(c).

On June 15, 1989, the Secretary made a determination that New Jersey state court eviction proceedings under the New Jersey Anti–Eviction Act, 2A:18–61, *et seq.*, satisfied the requirements of due process under 24 C.F.R. § 966.53(c). *See* Balis Declaration, Attachment 1 (Due Process Determination). As a result of the Secretary's due process determination, a housing authority operating public housing in New Jersey is authorized to exclude prior administrative grievance hearings for eviction proceedings brought in either the Special Civil Part or in the Law Division.[4] The Housing Authority brought the instant eviction proceeding against Jackson in the Special Civil Part, without affording a grievance hearing, pursuant to the Secretary's due process determination.

In count one of both her counterclaim and her third party complaint, Jackson challenges the Secretary's due process determination for the Special Civil Part.[5] Specifically, Jackson argues that the Secretary erred in concluding that eviction procedures in the Special Civil Part satisfy 24 C.F.R. § 966.53(c)(2), which requires:

> Opportunity for the tenant to examine all relevant documents, records and regulations of the PHA [public housing agency] prior to the trial for the purpose of preparing a defense.

Because the Secretary erred in finding that the eviction procedures in the Special Civil Part satisfy the "basic elements of due process," Jackson contends, she should have been afforded a grievance hearing before she was sued in that court.

In addition to her challenge to the Secretary's due process determination, in count two of her counterclaim, Jackson contends that, pursuant to the terms of her lease with the Housing Authority, she should have been afforded a prior grievance hearing, even if the Secretary's due process determination was correct. The Housing Authority moves for summary judgment dismissing this count, arguing (1) that the Secretary's due process determination renders the lease provision inoperative, and (2) that in any event, Jackson is not entitled to a grievance hearing, under a lease provision which allows the Housing Authority to proceed directly to court to evict a tenant who poses a "threat to the health and safety" of other tenants or the Housing Authority employees.

## DISCUSSION

### A. Procedural Issues.

The Secretary urges the court not to reach the merits of this case, insisting that there are two procedural obstacles to considering Jackson's claims. First, the Secretary argues that he is not a proper party to this case. Second, the Secretary contends that Jackson has no standing to raise her objections to HUD's due process determination. I consider each of these arguments in turn.

### 1. Joinder of the Secretary.

As noted, Jackson impleaded the Secretary as a third party defendant in the New Jersey state court, before the Secretary removed this action to federal court. The Secretary contends that this joinder was improper, because under Fed.R.Civ.P. 14(a), governing third party practice, impleader "is a narrow device for imposing liability on a third party, not joined in the action, who may be liable to a defendant on plaintiff's claim against that defendant." Secretary's Brief in Support of Summary Judgment ("Secretary's Br."), at 7 n. 3.

---

**4.** Eviction proceedings may be brought in either the Special Civil Part or the Law Division. *See Guttenberg Savings & Loan Ass'n v. Rivera*, 85 N.J. 617, 628, 428 A.2d 1289 (1981).

As the Secretary observed in his due process determination, a tenant sued in the Special Civil Part may "in rare, and unusual cases," seek a transfer to the Law Division. *See* Balis Declaration, Attachment 2 (Due Process Determination, at 1).

**5.** Jackson does not challenge the Secretary's due process determination for the Law Division, and I do not consider that issue here.

Because Jackson does not seek to impose on the Secretary some or all of the relief sought by the Housing Authority, the Secretary argues that the impleader was improper and the third party complaint should be dismissed.

Assuming *arguendo* that the Secretary's understanding of the scope of permissible third party practice is correct,[6] I conclude nonetheless that the Secretary is properly made a party to this action, pursuant to Rule 13(h), as either a necessary defendant to Jackson's counterclaim against the Housing Authority under Rule 19(a), or joined permissively under Rule 20(a).[7]

As the Supreme Court has held, under the federal rules of civil procedure "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The rules are not designed "to lay a subtle snare for the unwary pleader, but rather to avoid multiple lawsuits, except where a showing of oppression, prejudice or delay is made." *Independent Liberty Life Insurance Co. v. Fiduciary & General Corp.*, 91 F.R.D. 535, 537 (W.D.Mich.1981). *See also Frommeyer v. L. & R. Construction Co.*, 139 F.Supp. 579, 585 (D.N.J.1956) ("[t]he aim of procedural rules is facilitation not frustra-

tion of decisions on the merits"). Where a third party complaint has been challenged, courts have not hesitated to consider whether joinder could be effectuated under Rule 19 or Rule 20 instead. *See, e.g., Brooks v. Hickman*, 101 F.R.D. 16, 18 (W.D.Pa.1984); *Brooks v. Hickman*, 101 F.R.D. 19, 20 (W.D.Pa.1984); *Livera v. First National State Bank of New Jersey*, 100 F.R.D. 271, 273 (D.N.J.1983); *Independent Liberty*, 91 F.R.D. at 537, 538 ("the present controversy should be resolved on the basis of substance, not form"). *Cf. Livera v. First National Bank of New Jersey*, 879 F.2d 1186, 1191–93 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989).

There is no question that the Secretary should be joined to this action as a necessary party. A number of cases are precisely on point. For example, in *McCowen v. Jamieson*, 724 F.2d 1421 (9th Cir.1984), a challenge was brought to a state agency's failure to replace lost food stamps within a ten day period specified by federal regulation. The United States Department of Agriculture had granted a waiver to the state agency, allowing it to replace the food stamps within fifteen days. The plaintiffs challenged the validity of the waiver. The Ninth Circuit held that the joinder of the Department of Agriculture as a necessary party was appropriate under Rule 19(a)(2)(i), which provides for joinder

6. As Jackson points out, the Secretary was impleaded in the New Jersey state court, where the third party practice rule provides that the defendant may also "assert any claim which he has against the third-party defendant involving a common question of law or fact arising out of the same transaction or series of transactions as the plaintiff's claim." N.J.Ct.R. 4:8–1(a). *See also Horner Mack Trucks, Inc. v. Crescar Corp.*, 141 N.J.Super. 599, 601–02, 359 A.2d 519 (Law Div.1976) (under Rule 4:8–1 there must be "the existence of a common question of law or fact" and "the third-party complaint [must] arise from the same transaction or series of transactions as the plaintiff's claim").

Thus, citing "the well-established rule that a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court," *Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 570 (8th Cir.1989), Jackson argues that the third party complaint should be tested by the more liberal standards

of New Jersey state courts, rather than federal law. *See also Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir.1987) (the federal rules of civil procedure "do not apply to the filing of pleadings or motions prior to removal"); *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir.1963) (federal rules "neither add to nor abrogate what has been done in the state court prior to removal"); *Instituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Products, Inc.*, 47 F.R.D. 310, 312 (S.D.N.Y.1969) ("[o]nly pleadings filed subsequent to removal must conform to the requirements of the federal rules").

Because there is no question, however, that the Secretary may be joined as an additional party under either Rule 19 or Rule 20, I need not address these arguments.

7. New Jersey's civil practice rules include virtually identical provisions for the joinder of parties. *See* N.J.Ct.R. 4:7–6, 4:28–1(a); 4:29–1(a).

"where a potential party claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may impair his ability to protect that interest." *Id.* at 1424. As in *McCowen* so also here, to litigate the validity of the waiver "without the Secretary's being a party to the action would be to 'deprive it of the right to defend the integrity of its administrative decisions in these areas which so intimately affects its policies and procedures.'" *Id.* at 1423.

Likewise, in *Lopez v. Arraras*, 606 F.2d 347, 353 (1st Cir.1979), involving a challenge by tenants to a state housing authority's alleged failure to comply with the Housing Act, the court ordered the joinder of HUD as a necessary party, saying that "we are loath to resolve this controversy without affording HUD the occasion to fully present its position." *See also Guesnon v. McHenry*, 539 F.2d 1075, 1077–78 (5th Cir.1976) (joinder of HUD desirable so that HUD could explain one of its regulations); *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478–80 (6th Cir.1972) (HUD a necessary party when the legality of its actions is at issue); *Gardner v. Nashville Housing Authority*, 468 F.2d 480, 481 (6th Cir.1972) (same). Therefore, the Secretary is a necessary party to this challenge to his due process determination for New Jersey.

Similarly, joinder of the Secretary is proper under Rule 20, which allows defendants to be joined in one action "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). *See, e.g., Williamsburg Fair Housing Committee v. New York City Housing Authority*, 73 F.R.D. 381, 383–84 (S.D.N.Y.1976) (in suit against housing authority for racial discrimination, where HUD was responsible for administering federally assisted housing programs, HUD was properly made a party to the dispute). In this case, Jackson's counterclaim against the Housing Authority and her complaint against the Secretary both arise out of her eviction proceeding, and both raise the identical legal claim that Jackson has been improperly denied a grievance hearing.

I conclude that the Secretary is properly joined as a defendant to Jackson's counterclaim against the Housing Authority. Indeed, insofar as that counterclaim involves a challenge to the Secretary's due process determination, it is difficult to understand why the Secretary wants to be dismissed from the suit.

2. Jackson's Standing.

■ The Secretary's next argument is that Jackson lacks standing to challenge his due process determination for New Jersey. For Article III standing, a plaintiff must "'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted). In addition, as a prudential matter, federal courts generally require that a plaintiff assert her own legal rights and interests, and that her claims "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Id.* at 474–75, 102 S.Ct. at 759–60 (citations omitted). *See also New Jersey Speech–Language–Hearing Ass'n v. Prudential Insurance Co.*, 724 F.2d 383, 385 (3d Cir. 1983).

Jackson is facing an eviction proceeding which she alleges is unlawful because she was improperly denied a grievance hearing. It is agreed that she has been denied the hearing because the Secretary has issued a determination which allows the Housing Authority to dispense with the hearing and proceed directly to court. Therefore, Jackson's injury—a denial of the grievance hearing—"fairly can be traced to the challenged action," *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758, namely, the Secretary's due process determination, and it is

likewise plain that the Housing Authority would not be able to initiate suit in the Special Civil Part without a prior hearing if the Secretary's determination were successfully challenged. Turning to prudential considerations, Jackson is asserting her own legal rights and interests, and as a public housing tenant her claims clearly fall within the "zone of interests" protected by the Housing Act, 42 U.S.C. § 1437d(k), which provides for grievance hearings except in specified circumstances. *See Chicago Housing Tenants Organization, Inc. v. Chicago Housing Authority*, 512 F.2d 19, 22 (7th Cir.1975) (tenants of housing authority were within "zone of interests" for challenging failure to follow grievance procedure).

Nonetheless, the Secretary argues that Jackson lost her standing to challenge the Secretary's due process determination when the eviction proceeding was transferred to the Law Division. This is so, the Secretary contends, because the basis for Jackson's challenge to the Secretary's due process determination is that the Special Civil Part, where she was initially sued, does not guarantee her a right to discovery. However, the Secretary reasons, this defect was cured when the eviction proceeding was transferred to the Law Division, where discovery is available as a matter of right. In essence, the Secretary's position is that Jackson's challenge to the due process determination became moot when the case was transferred to the Law Division, where Jackson could be afforded all the due process guaranteed under the regulations.

The flaw in this argument is readily apparent. The Secretary has not suggested that he will rescind his due process determination, nor has the Housing Authority indicated that it will not bring eviction proceedings in the Special Civil Part without first providing a grievance hearing. Jackson herself may well be subject to these proceedings in the future. If the current proceeding does not result in an eviction, she may be sued again in the Special Civil Part; indeed, Jackson avers that in the pending action, if her claims are dismissed as the Secretary suggests, she will likely

be remanded to the Special Civil Part. Yet, for Jackson or any other tenant sued in the Special Civil Part to challenge the Secretary's determination, she must first seek a transfer to the Law Division, because only that forum will entertain counterclaims and the joinder of third parties. *See* N.J.Ct.R. 6:3–4 (prohibiting counterclaims and joinder of third parties in summary landlord-tenant proceedings). The upshot of the Secretary's argument, therefore, is that Jackson, as well as other public housing tenants, will regularly be subject to eviction in the Special Civil Part without a prior grievance hearing, but any challenge to the denial of the hearing must be preceded by a transfer to the Law Division, thus rendering the challenge moot.

The doctrine governing justiciability anticipates circumstances such as are presented here by carving out two exceptions to the mootness doctrine. First, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), *quoted in Dow Chemical Co. v. EPA*, 605 F.2d 673, 679 (3d Cir.1979). *See also Atlantic Richfield Co. v. United States*, 774 F.2d 1193, 1198 (D.C.Cir.1985); *Hooker Chemical Co. v. EPA*, 642 F.2d 48, 52 (3d Cir.1981); *Bethlehem Steel Corp. v. Train*, 544 F.2d 657, 660 (3d Cir.1976), *cert. denied sub nom. Bethlehem Steel Corp. v. Quarles*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977). In *Dow*, the plaintiff challenged an agency rule which was subsequently withdrawn. The Third Circuit held that the case remained justiciable, however, because the agency had not altered its substantive stand, and stated that the rule would be resubmitted. 605 F.2d at 679. Likewise, in this case the Secretary has not rescinded his due process determination and Jackson may well be subject again to eviction proceedings in the Special Civil Part without a prior grievance hearing. Unless "there is no reasonable expectation ... that the alleged violation will recur," voluntary cessation of allegedly illegal agency action does

not render a challenge to that action moot. *Doe v. Harris*, 696 F.2d 109, 111 (D.C.Cir. 1982). *See also Phillips v. Pennsylvania Higher Education Assistance Agency*, 657 F.2d 554, 569 (3d Cir.1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1284, 71 L.Ed.2d 466 (1982). The fact that Jackson's case was transferred to the Law Division no more deprives her of standing than if the Housing Authority had agreed to grant her a grievance hearing. *See Better Government Ass'n v. Dep't of State*, 780 F.2d 86, 91–92 (D.C.Cir.1986) (FOIA requesters who brought action challenging guidelines for fee waivers but were subsequently granted fees were still able to bring facial challenge to fee waiver provisions). *Cf. King v. Housing Authority of Huntsville*, 670 F.2d 952, 955 (11th Cir.1982) (in challenge to denial of prior grievance hearing where judicial procedure did not require discovery, it was "immaterial that the parties have stipulated that the Housing Authority will provide King with this discovery").

Moreover, Jackson's challenge to the Secretary's due process determination falls within the "capable of repetition, yet evading review" exception to mootness. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546–47, 96 S.Ct. 2791, 2796–97, 49 L.Ed.2d 683 (1976) ("jurisdiction is not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one 'capable of repetition yet evading review' "). *See also Abourezk v. Reagan*, 785 F.2d 1043, 1052 (D.C.Cir.1986), *aff'd by an equally divided court*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987); *Cerro Wire & Cable Co. v. FERC*, 677 F.2d 124, 127 n. 2 (D.C.Cir. 1982); *cf. Yearsley v. Scranton Housing Authority*, 487 F.Supp. 784, 787–88 (M.D. Pa.1979). For example, in *DeBrown v. Trainor*, 598 F.2d 1069 (7th Cir.1979) plaintiffs challenged the termination of public assistance benefits. While their action was pending, their benefits were restored, together with retroactive benefits. Nonetheless, the court held that the case was not moot, where a break in assistance might recur. *Id.* at 1071. Likewise, in *Leonard v. Hammond*, 804 F.2d 838, 842–43 (4th Cir.1986) the court found that al-though indigents who had been imprisoned under civil contempt orders had since been released, they could well be subject to civil contempt proceedings again in the future. Similarly, in this case, Jackson may again be subject to eviction proceedings in the Special Civil Part. And in any subsequent proceedings she would face the same dilemma she faces here: any attempt to challenge the Secretary's due process determination would necessitate a transfer to the Law Division. Thus, her challenge to the denial of a grievance hearing would continue to evade review. Contrary to the Secretary's reasoning, Jackson "cannot simply be consigned forever to ride the merry-go-round." *Duggan v. Bowen*, 691 F.Supp. 1487, 1509 (D.D.C.1988).

### B. The Merits.

1. Validity of Secretary's Due Process Determination.

 Turning to the merits of Jackson's challenge to the Secretary's due process determination, the issue presented is a narrow one. First, all parties agree that under the Housing Act the Secretary is mandated to require all public housing authorities to establish and maintain an administrative grievance procedure for the resolution of all tenant disputes concerning planned adverse action by the housing authorities. 42 U.S.C. § 1437d(k). At the same time, all parties agree that the housing authorities may exclude from their grievance procedures all actions involving evictions or terminations of tenancies, if and only if the Secretary first makes a determination that the applicable judicial eviction process complies with due process. *Id.* Finally, it is common ground that the applicable standards for determining whether a judicial proceeding complies with due process are set forth in HUD's own regulations. *See* 24 C.F.R. § 966.53(c).

Thus, the only question presented is whether the Secretary is correct in finding that New Jersey state law governing evictions brought in the Special Civil Part under the Anti–Eviction Act, N.J.S.A. 2A:18–61, *et seq.*, meets the due process standards set forth in 24 C.F.R. § 966.53(c). Under

the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), this determination will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (agency decision will be set aside if it is a "clear error of judgment").

Jackson specifically challenges one aspect of the Secretary's due process determination, namely, that the New Jersey eviction procedures in the Special Civil Part "provide a tenant with adequate opportunity to examine relevant documents and materials." *See* Balis Declaration, Attachment 2 (Due Process Determination, at 4–5). *See also* 24 C.F.R. § 966.53(c)(2) (due process requires that tenants have an "[o]pportunity ... to examine all relevant documents, records and regulations of the PHA [public housing agency] prior to the trial for the purpose of preparing a defense"). Jackson contends that this finding is based on a misinterpretation of state law. I agree.[8]

The New Jersey court rules, specifically, N.J.Ct.R. 4:18–1(b), allow a party to serve a request for production of documents, which must be answered within thirty (30) days. This rule is specifically applicable to actions in the Special Civil Part. N.J.Ct.R. 6:4–3(e). However, summary landlord-tenant proceedings in the Special Civil Part are heard on an expedited basis. As a result, the trial in a summary dispossess proceeding must be held within thirty (30) days of the service of the summons. N.J. Ct.R. 6:2–1 (the summons "shall require the defendant to appear and state a defense at a certain time and place, to be therein specified, which time shall be not less than 10 days ... nor more than 30 days from the date of service of the summons"). The effect of Rule 6:2–1 is that even a tenant who serves a request for production of documents on the day she receives a summons cannot compel a response *"prior to the trial* for the purpose of preparing a defense," as required by 24 C.F.R. § 966.53(c)(2) (emphasis added). In fact, New Jersey courts have consistently interpreted their rules to mean that "[c]onsistent with the summary nature of the [dispossess] proceedings, our court rules do not permit ... discovery proceedings." *Fargo Realty, Inc. v. Harris*, 173 N.J.Super. 262, 267, 414 A.2d 256 (App.Div.1980). *See also Carr v. Johnson*, 211 N.J.Super. 341, 347, 511 A.2d 1208 (App.Div.1986) (dispossess proceeding in Special Civil Part "is a summary proceeding in which discovery is not permitted"); *C.F. Seabrook Co. v. Beck*, 174 N.J.Super. 577, 590 (App.Div. 1980); *Hill Manor Apartments v. Brome*, 164 N.J.Super. 295, 309, 395 A.2d 1307 (D.Ct.1978) ("[s]ince eviction proceedings are of a summary nature ... pretrial discovery is not permitted").[9]

This simply does not meet the due process requirements of 24 C.F.R. § 966.53(c)(2). "This regulation does not allow the [PHA grievance] hearing to be by-passed when the Housing Authority provides the tenant with discovery as a matter of grace, or when the state court provides the discovery as a matter of discretion." *King v. Housing Authority of Huntsville*, 670 F.2d 952, 955 (11th Cir.1982). In *King* the court held that the failure to provide the grievance hearing violated the regulation when the state court procedures allowed discovery as a matter of discretion

---

**8.** Although the standard of judicial review of agency action under 5 U.S.C. § 706(2)(A) is ordinarily deferential, "[o]n questions of law, administrative judgment is subject to plenary judicial review." *Dill v. INS*, 773 F.2d 25, 28 (3d Cir.1985). In particular, ordinary deference to an agency's decision does not apply "where, as here, the administrator's legal decision is based on his interpretation of a judicial opinion that in turn construes a statute." *Institute for Scientific Information, Inc. v. United States Postal Service*, 555 F.2d 128, 132 (3d Cir.1977). *See also H.W. Wilson Co. v. United States Postal Service*, 580 F.2d 33, 37 (2d Cir.1978). I would add that deference is particularly unwarranted where the agency's decision is based on state, rather than federal, law.

I find, however, that even if the Secretary's decision were entitled to ordinary deference, it would still be invalid under 5 U.S.C. § 706(2)(A).

**9.** Discovery is available in the Special Civil Part for nonsummary actions. *See, e.g.,* N.J.Ct.R. 6:1–2(a)(1) (civil actions seeking relief not in excess of $5,000).

and not as of right, even though the housing authority agreed voluntarily to provide the documents. As the court held, § 966.53(c)(2)'s mandate is met only if the "state law *requires* that the discovery be granted." *King*, 670 F.2d at 955 (emphasis in original). *See also Escalera*, 425 F.2d at 862 (tenants facing eviction for non-desirability are deprived of due process where housing authority denied them access to information used against them).

The Secretary apparently does not contest this point. *See* Secretary's Reply Br. at 3. Indeed, in due process determinations for other states, the Secretary found that the requirements of 24 C.F.R. § 966.53(c)(2) were not met where the tenant was not guaranteed a right to examine documents prior to trial. *See* Diebold Certification, Attachment B (Due Process Determination for Virginia, at 2–3 & n. 2) (where applicable law provides that a judge "may issue" a subpoena for document production, the tenant is not given "a right to examine relevant materials prior to trial as required under § 966.53(c)(2) of the HUD regulation"); Attachment D (Due Process Determination for Indiana, at 3 n. 3) (a tenant "does not have the right to examine relevant documents prior to trial" where the time for responding to a request for

production of documents is longer than the notice period for a hearing on the action); *id.* at 6 (where discovery is granted "by permission of the court ... a tenant does not have the opportunity to examine relevant documents prior to trial").[10]

However, the Secretary argues that the due process requirements are nonetheless met, because a tenant sued in the Special Civil Part may transfer the proceedings to the Law Division, *see* N.J.S.A. 2A:18–60,[11] where discovery as of right is provided. *See* N.J.Ct.R. 4:10 to 4:24.[12]

The difficulty with the Secretary's argument, however, is that transfer to the Law Division itself is a matter of discretion, and the court need only transfer those cases it deems are of "sufficient importance." N.J. S.A. 2A:18–60. *See Ivy Hill Park Apartments v. GNB Parking Corp.*, 237 N.J.Super. 1, 3–4, 566 A.2d 820 (App.Div.1989); *Master Auto Parts, Inc. v. M & M Shoes, Inc.*, 105 N.J.Super. 49, 53, 251 A.2d 135 (App.Div.1969) ("the application to transfer a tenancy proceeding is addressed to the discretion of the trial court"). For example, in *Ivy Hill* the court upheld a denial of a motion to transfer, noting that "[t]here were no legal or equitable issues of complexity, such as title disputes, constructive

10. If the Secretary has followed an inconsistent pattern in making due process determinations, this would itself be a basis for finding that the Secretary's decision was "arbitrary and capricious" under 5 U.S.C. § 706(2)(A). *See, e.g., Revak v. National Mines Corp.*, 808 F.2d 996, 1002 (3d Cir.1986) ("an agency cannot change an established course of conduct without articulating 'a reasoned connection between the facts found and the choice made' "). *See also Airmark Corp. v. FAA*, 758 F.2d 685, 691–92 (D.C. Cir.1985) (where agency "arbitrarily applied different decision criteria" in granting and denying exemptions from regulations, agency decisions were vacated).

11. N.J.S.A. 2A:18–60 actually refers to transfer from the "county district court," but this is deemed to refer to the Special Civil Part. *See supra* note 1.

12. This appears to be a post hoc rationale, developed by the Secretary in the course of these proceedings. In his due process determination for New Jersey, the Secretary relied solely on the fact that the provision for requests for production of documents, N.J.Ct.R. 4:18–1(b), is

applicable to proceedings in the Special Civil Part. *See* N.J.Ct.R. 6:4–3(e). The Secretary apparently was unaware that this provision was rendered ineffective by the expedited nature of summary eviction proceedings, and he did not take note of the state decisional law which holds that discovery is unavailable in summary dispossess actions in the Special Civil Part.

Such " 'post hoc' rationalizations ... have traditionally been found to be an inadequate basis for review." *Citizens to Preserve Overton Park*, 401 U.S. at 419, 91 S.Ct. at 825. *See also Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974) (court cannot "accept appellate counsel's post hoc rationalizations for agency action"; an agency's orders will be upheld, if at all, "on the same basis articulated in the order by the agency itself"); *Ace Motor Freight, Inc. v. Interstate Commerce Comm'n*, 557 F.2d 859, 864 (D.C.Cir. 1977); *Dry Color Manufacturers' Ass'n v. Dep't of Labor*, 486 F.2d 98, 104 n. 8 (3d Cir.1973). Even giving the Secretary the benefit of his post hoc rationale, however, I still find that due process determination for the Special Civil Part was erroneous.

trusts, class actions, injunctions and the like which would be prejudiced by the absence of formal discovery or incapable of resolution in the Special Part." 237 N.J. Super. at 3. Indeed, as the Secretary noted in his due process determination, a tenant sued in the Special Civil Part may seek a transfer to the Law Division only "in rare, and unusual cases." *See* Balis Declaration, Attachment 2 (Due Process Determination, at 1).[13]

Because a motion to transfer is discretionary with the court, a tenant sued in the Special Civil Part is provided with discovery only "as a matter of grace," *King*, 670 F.2d at 955, not as a matter of right, as required by 24 C.F.R. § 966.53(c)(2). Therefore, I conclude that the Secretary committed a clear error of law in finding that the grievance procedures required by 42 U.S.C. § 1437d(k) may be excluded for summary eviction proceedings brought in the Special Civil Part. Consequently, that determination must be set aside.

## 2. The Lease Provision.

■ Jackson's lease with the Housing Authority provides in relevant part:

[A]ll disputes except as noted below ... shall be processed and resolved in accordance with the Grievance Procedure of the Authority which is in effect at the time such grievance of appeal arises.... The Grievance Procedure must conform to

Volume 24, Code of Federal Regulations, Part 866.

Any action by the Authority to terminate this Lease based upon a Tenant's creation or maintenance of a threat to the health and safety of Tenant's [sic] or Authority employees shall not be subject to the Grievance Procedure in accordance with Volume 24, Code of Federal Regulations, Part 866–51(a).

Lease, ¶ 15.

The lease provision is based on the regulatory scheme which existed prior to the passage of 42 U.S.C. § 1437d(k). That regulatory scheme allowed housing authorities to exclude grievance hearings in evictions "based upon a tenant's creation or maintenance of a threat to the health or safety of other tenants or PHA employees," but *only* "in those jurisdictions which require that, prior to eviction, a tenant be given a hearing in court containing the elements of due process, as defined in § 966.53(c)." 24 C.F.R. § 966.51(a).

The Secretary and the Housing Authority concede that with the passage of § 1437d(k), the regulations continue to apply only where consistent with the statutory requirements. As a consequence, a tenant can never be denied a grievance hearing prior to eviction, unless the Secretary has made a proper due process determination, regardless of whether the tenant poses a threat tò the health or safety of

**13.** The Secretary relies on the Law Division's decision in *Morrocco v. Felton*, 112 N.J.Super. 226, 270 A.2d 739 (Law Div.1970) for the proposition that a court will be *required* to transfer a case whenever discovery is sought.

*Morrocco* provides little support for the Secretary's position. The case involved a transfer for consolidation with a class action suit; it had nothing to do with discovery. The court noted that the question of transfer was a "matter of discretion" with the court, *id.* at 230, 270 A.2d 739, and observed that "[e]very motion for removal must therefore be considered on a case by case basis to achieve an equitable result." *Id.* at 235, 270 A.2d 739. Finally, the court described eight "guidelines" for determining whether transfer is appropriate, only one of which was "[t]he complexity of the issues presented, where discovery or other pretrial procedures are necessary or appropriate." *Id.* The only support for the Secretary's argument is dicta near the end of the opinion, where the

court states that "[i]n those cases in which one or more of these considerations are present, the court should grant removal." *Id.* at 236, 270 A.2d 739.

As the Appellate Division later noted in *Ivy Hill*, this is at best "questionable dicta" to support the proposition that the presence of even one factor set forth in *Morrocco* deprives the court of discretion to evaluate a given case, and automatically compels a transfer. *See* 237 N.J. Super. at 4, 566 A.2d 820. Even taken at face value, *Morrocco* at most holds only that in circumstances of sufficient "complexity" a case may be transferred for purposes of obtaining discovery. *See also Carr v. Johnson*, 211 N.J.Super. 341, 347, 511 A.2d 1208 (App.Div.1986) (where complex equitable questions as to title are raised, case may be transferred for purposes of obtaining discovery). This is a far cry from holding that transfer is mandatory whenever discovery is sought.

others. *Skinner v. Boston Housing Authority*, 690 F.Supp. 109, 113–14 (D.Mass. 1988). Because I hold that the Secretary's due process determination for evictions brought in the Special Civil Part is invalid, a tenant sued in that court must always be provided with a prior grievance hearing. Regardless of her lease provisions, Jackson cannot be afforded less due process than the Housing Act mandates.

While Jackson cannot be sued in the Special Civil Part without a prior grievance hearing, a question remains regarding the Law Division. Jackson does not argue that the Law Division's procedures fail to meet the due process requirements of 24 C.F.R. § 966.53(c). Since the Secretary has made an unchallenged due process determination for the Law Division, a tenant may be sued in that court without a prior grievance hearing, consistent with the requirements of the Housing Act.

Jackson's lease, however, provides that she is entitled to a grievance hearing in any case, unless the eviction is based on the fact that she is creating or maintaining a threat to the health or safety of other tenants or employees of the Housing Authority. That contractual limitation on the Housing Authority's power to by-pass the grievance hearing is still binding on the Housing Authority, inasmuch as the lease has not been properly modified by a written rider, executed by both parties. *See* 24 C.F.R. § 966.4(n); *Twyman v. Rockville Housing Authority*, 99 F.R.D. 314, 317 (D.Md.1983). Thus, in the absence of such a threat to health and safety, Jackson would still be entitled to a prior grievance hearing, even if she were sued in the Law Division, rather than the Special Civil Part.

■ The second count of Jackson's counterclaim against the Housing Authority is based on her contention that she does not pose such a threat, and therefore she is entitled to a grievance hearing. The Housing Authority has moved for summary judgment dismissing this count based on the fact that Jackson's son was arrested for possession of a controlled substance; the Housing Authority has submitted no evidence supporting its contention that this fact alone proves the existence of a threat to the safety and health of others.[14]

■ Jackson contests the allegation that her son's arrest involves a threat to the safety and health of others. Given that there is a disputed issue of material fact, summary judgment dismissing the second count of Jackson's counterclaim is not warranted. Summary judgment is only appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary materials of the record were reduced to admissible evidence in court, they would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence must be viewed in a light most favorable to the party opposing the motion. *Wahl v. Rexnord*, 624 F.2d 1169, 1181 (3d Cir.1980). In view of the fact that discovery has not yet occurred regarding the basis for the Housing Authority's determination that the eviction was based on a threat to health and safety, summary judgment is particularly inappropriate. *See Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069, 1085 (3d Cir.1988). I cannot say that the bare fact of an arrest for a drug offense constitutes, as a matter of law, a threat to the safety of health of others.[15]

---

**14.** While the Housing Authority alleges other incidents in prior years involving Jackson, it was solely the arrest of Jackson's son which precipitated the eviction proceedings.

**15.** I emphasize that I address only an issue of procedure. I do not address the merits of the Housing Authority's eviction action against Jackson; still less do I address the wisdom of their apparent policy of evicting entire families for the alleged transgressions of one household member. *Cf. United States v. Robinson*, 721 F.Supp. 1541, 1543–45 (D.R.I.1989) (forfeiture of defendant's apartment and her federal housing assistance payments for drug offense constitutes excessive punishment under Eighth Amendment).

### C. Remand to State Court.

■ The challenge to the Secretary's due process determination having been decided, the only issues remaining concern the lease's provision for a grievance hearing, and the merits of the eviction proceeding itself. It seems fairly clear that these issues raise only questions of state law. *See Edwards v. District of Columbia,* 821 F.2d 651, 653 n. 2 (D.C.Cir.1987); *Nelson v. Greater Gadsden Housing Authority,* 802 F.2d 405, 407 (1986). Given that the federal claims have been resolved, I conclude that this case should be remanded to the Law Division, for further proceedings consistent with this opinion. *See Lovell Manufacturing v. Export–Import Bank of the United States,* 843 F.2d 725, 734 (3d Cir. 1988); *Cole v. Pathmark of Fairlawn,* 672 F.Supp. 796, 807 (D.N.J.1987).

If the Housing Authority wishes to proceed against Jackson in the Special Civil Part, the present action must be dismissed and the Housing Authority must afford Jackson a grievance hearing, pursuant to 24 C.F.R. Part 966. If the Housing Authority wishes to proceed in the Law Division, that court will first have to consider whether Jackson is entitled to a prior grievance hearing under the terms of her lease. If so, the action must be dismissed for failure to provide such a hearing. If not, the Housing Authority's action against Jackson may proceed in the Law Division.

### CONCLUSION

For the foregoing reasons, the Housing Authority's and the Secretary's motions for summary judgment are denied, and Jackson's cross-motion for summary judgment is granted. The Secretary's determination, dated June 15, 1989, that eviction proceedings brought under New Jersey's Anti–Eviction Act, N.J.S.A. 2A:18–61, *et seq.,* in the Special Civil Part, meets the requirements of due process as defined in 24 C.F.R. § 966.53(c), is hereby set aside. An appropriate order follows.