211 N.J. Super. 341 (1986)
511 A.2d 1208
WARREN H. CARR, EXECUTOR OF THE ESTATE OF MARY SMITH, DECEASED, PLAINTIFF-RESPONDENT,
v.
CARRIE JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 4, 1986.
Decided June 23, 1986.
*343 Before Judges KING, O'BRIEN and SCALERA.
Christopher C. Cona, attorney for appellant (Peter J. Cohen, on the letter brief).
Fred A. Gravino, attorney for respondent.
The opinion of the Court was delivered by SCALERA, J.S.C. (temporarily assigned).
Defendant, Carrie Johnson, appeals from a judgment rendered against her in a summary landlord and tenant dispossess proceeding conducted in the Special Civil Part of the Superior Court. We reverse because the Special Civil Part lacked jurisdiction to adjudicate the issues raised by the parties in the dispossess action.
The evidence produced before the trial court revealed that the parties' contention concerning ownership of the property in question was in sharp dispute. It indicated that the property (5.1 acres) was owned originally by John R. and Anna H. Sharp. About 35 or 40 years ago, they sold the property to Carrie *344 Johnson (Carrie) and her husband, Cornelius, and Mary Smith (Mary), plaintiff's decedent, and her husband, John Henry, for $500. According to the conditions of the sale, the purchasers were not required to pay any set amount at regular intervals. Roy Sharp, the seller's son, testified that his father had discussed the sale with him and the Johnsons and the Smiths were supposed to pay the purchase price equally. There were no houses on the land at that time, but they each built their own house on the property about two years after the purchase. Johnson and Smith would make payments every two weeks or every month, whenever they had money. Ninety-nine percent of the time they went to the Sharps together to make their payments. The $500 price was paid within 10 years. The defendant testified that she and her husband paid their full share of $250. Apparently, no deed evidencing the sale was ever executed.
In 1963, Cornelius Johnson (defendant's husband) died and shortly thereafter, John Henry Smith (decedent's husband) died. Thereafter Mary had the property surveyed without Carrie's knowledge. On October 14, 1963, a deed of conveyance was executed transferring the property from Anna Sharp to Mary following a subdivision of the property requiring a variance from the planning board. Carrie and Roy Sharp were unaware of either the deed or the subdivision proceeding. Carrie claimed that thereafter Mary told her that since her husband had died, she (Mary) could not pay the taxes by herself so they agreed to share the expense of the taxes. Subsequently, Carrie did pay the "taxes" to Mary. Mary died November 3, 1983 and plaintiff, Warren H. Carr (Carr), became executor of her estate.
Carr claimed that the payments made by Carrie were for rent and not for taxes. He was allowed to testify that he was informed that Carrie had been paying rent before Mary died. After Mary had died, he requested of Carrie that she continue to pay the rent which she did. On these occasions he gave her a receipt which indicated that the payments were for rent. Although Carrie knew that the receipts were marked as rent *345 she did not question them, asserting that under her agreement with Mary the money was for taxes. At that time the taxes were $1900 per year. The money Carrie allegedly paid as rent would have roughly equalled one-half of the taxes. In 1984 she paid $60 per month for December, January, February, March and April, then $100 per month for May and June, 1984. There was no evidence concerning the amounts she paid when Mary was alive or how much the taxes were during that time.
Carrie readily admitted that she knew nothing about any of the title papers for the property. She claimed that whenever she would ask her aunt Mary about the property, Mary would not tell her anything or would change the subject. Mary would ask Carrie if she knew anything about the title to the property, and Carrie would respond by saying that she knew nothing because her late husband had handled the matter.
Carr claimed that they had offered to sell the property to Carrie and that she had never challenged the offer with any claim of ownership. Carrie testified that she was never asked about purchasing the property but that her son was asked because he was named as the beneficiary in Mary's will. Carr then undertook to sell the property on behalf of Mary's estate and to evict Carrie. Carrie was unaware that her name was not on the deed until she received the notice to quit. Once Carrie received the notice to vacate the property, she stopped paying any monies.
Carr instituted this dispossess action seeking a judgment for possession and a warrant for Carrie's removal. At the summary hearing it became apparent that Carrie was claiming ownership of that portion of the property on which her house was located. She acknowledged that she possessed no title documents but asserted that she was entitled to an adjudication that a resulting or constructive trust had arisen for her benefit. Carr produced the deed as proof of title being in the estate and also sought to convince the trial court that Carrie's failure to *346 act under the circumstances barred her claim of ownership by virtue of laches.
At one point, the trial judge expressed doubt about his jurisdiction to decide such issues in a summary dispossess proceeding, but ultimately undertook to do so. He determined that legal ownership of the property lay with plaintiff's decedent, that defendant had not proven the elements of a constructive trust and that, in any event, she was guilty of laches. Accordingly, he entered a judgment of possession and ordered a warrant of removal.
On this appeal Carrie claims that,
Point I The trial court erred by applying the equitable Doctrine of Laches to bar the assertion of the plaintiff's ownership rights.
Point II Equitable estoppel bars the assertion of exclusive title in this case where the deceased by her voluntary conduct over a long period of time shared ownership with the defendant.
Point III Jurisdiction was not established by the lower court, since a landlord-tenant relationship did not exist.
Because we believe the issue of jurisdiction mentioned in Point III is dispositive, we do not address appellant's first two points or, whether such issues are cognizable on appeal from a summary dispossess action, N.J.S.A. 2A:18-59[1].
Defendant contends that the Special Civil Part did not have jurisdiction to decide this case because "a landlord tenant relationship [between the parties] did not exist." Carr asserts that the relationship did exist and plaintiff's title was never questioned. Neither party made a motion for removal or transfer pursuant to N.J.S.A. 2A:18-60.
*347 The summary dispossess statute was designed "... to give a landlord a quick remedy for possession." 18 N.J. Practice (McDonough, County District and Municipal Courts) (2ed 1971), § 1567 at 303. Accord Vineland Shopping Center, Inc. v. DeMarco, 35 N.J. 459, 462 (1961). The summary dispossess remedy is provided for under N.J.S.A. 2A:18-51 et seq. It is entirely a creature of the Legislature, Cahayla v. Saikevich, 119 N.J. Super. 116, 118 (Cty.Ct. 1972), and as such its provisions should be construed strictly. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 123 (1967).
Specifically, N.J.S.A. 2A:18-52 states:

If upon trial of a landlord and tenancy proceeding the plaintiff shall not be able to prove, by lease or other evidence, his right to the possession of the premises claimed by him without proving title to lands, tenements and hereditaments, the cause shall be dismissed, provided however that an assignee or grantee of a landlord may, at the trial or hearing, offer in evidence a deed or other writing for the purpose of showing the assignment or grant by the landlord. Furthermore a deed or other writing may be received for the purpose of showing the right to possession of the premises for the recovery of which the proceedings are brought. [Emphasis supplied].
The Legislature did not intend for the Special Civil Part (as successor to the County District Court) to determine disputed land titles and complex equitable issues in the context of a landlord-tenant dispossess action, 18 N.J. Practice, supra, § 1560 at 296, since it is a summary proceeding in which discovery is not permitted. Hill Manor Apts. v. Brome, 164 N.J. Super. 295, 309 (Cty.Ct. 1978). Moreover, to ensure the quickness of the remedy, the Legislature has limited the right of appeal to lack of jurisdiction only. N.J.S.A. 2A: 18-59; Marini v. Ireland, 56 N.J. 130, 136 (1970); Vineland, 35 N.J. at 463. Generally, a court hearing a dispossess action lacks general equitable jurisdiction. Scott v. Bodnar, 52 N.J. Super. 439, 447 (App.Div. 1958), certif. den. 29 N.J. 136 (1959). In other words, while such a court "... may hear equitable defenses and entertain equitable concepts, it is beyond the power of that court to grant permanent injunctive or other equitable relief to these parties as may appear just and appropriate under the circumstances presented." Morrocco v. Felton, 112 N.J. Super. *348 226, 230-231 (Law Div. 1970). Accord Vineland, 35 N.J. 459. Compare Marini v. Ireland, 56 N.J. at 139, where the Court observed that the then County District Court could entertain an equitable issue where it served to defeat an issue within its jurisdiction. As such, "... an equitable defense to the proof of an alleged rent default in a landlord-tenant dispossess proceeding is permissible...." Ibid.
Because these limitations are imposed, N.J.S.A. 2A:18-60 provides for transfer of such cases from a court of limited jurisdiction to the Superior Court. The statute evidences recognition that "... certain types of proceedings to remove a tenant involve rights or issues too important to be heard in a summary manner without a right of appeal." Master Auto Parts, Inc. v. M. & M. Shoes, Inc., 105 N.J. Super. 49, 52 (App.Div. 1969).
We agree with the Cahayla court's observations in this regard when it said,
The prime requisite for a summary dispossess action is the existence of a landlord-tenant relationship between the parties. A plaintiff's right to possession of property without such relationship is not cognizable by a county district court. Without a landlord-tenant relationship a plaintiff must seek possession of property through a Superior Court ejectment action. Title to the property from which a defendant is sought to be dispossessed is not a requisite to jurisdiction in the court; in fact, if proof of title is required, the court loses jurisdiction of the action. [119 N.J. Super. at 118].
The equitable defenses and remedies were substantial issues directed to title of the property. While the Court in Marini, supra, permitted such a court to assess equitable defenses as it affected the payment of rent, it did not enlarge its powers to include a determination of equitable defenses or counterclaims that relate to the question of ownership. Hence, in this case, the court erred in deciding the issues of title, constructive trust and laches in the context of a summary dispossess action. Moreover, R. 6:3-4 prohibits the filing of a counterclaim in a landlord-tenant proceeding. Yet, the issue of a constructive trust raised by defendant amounted to just such a counterclaim affecting title to the property.
*349 Lastly, consideration of the transfer statute and the factors suggested in Morrocco, 112 N.J. Super. at 235, also indicate the improvidence of a decision by the Special Civil Part in this summary hearing. If one or more of those factors compel a transfer, the court should do so, sua sponte, notwithstanding the parties' failure to make such a motion. R. 1:13-4(a); Id. at 236. The issues here were complex enough to require pretrial discovery to develop evidence concerning the relationship between these parties such as the amount of money paid by Carrie, the reasons for those payments, their relationship to the amount of taxes and full revelation of the circumstances leading up to the conveyance to Mary. Finally, the issues implicated also called for preservation of a full and complete right of appeal.
Accordingly we vacate the judgment entered in this matter and remand with directions that this case be transferred to the Law Division of the Superior Court for further proceedings not inconsistent with this opinion.
NOTES
[1] In 1983 the "jurisdiction, functions, powers and duties" of the county district courts were transferred to the Superior Court. N.J.S.A. 2A:4-3c. By order of the Supreme Court dated December 13, 1983, the Special Civil Part of the Superior Court was created and summary landlord/tenant actions were made expressly cognizable in that court. Part VI of the Rules Governing the Courts, which previously applied to the county district courts, was made applicable to the newly created Special Civil Part.