246 N.J. Super. 487 (1991)
587 A.2d 1337
ESSEX PROPERTY SERVICES, INC., PLAINTIFF,
v.
JOHN D. WOOD AND DIANE J. WOOD, DEFENDANTS.
Superior Court of New Jersey, Law Division Special Civil Part, Essex County.
Decided January 23, 1991.
*488 Erin J. Kennedy for plaintiff.
Richard K. Silberberg for defendants.
FAST, J.S.C.
The issue in this case is whether the relationship between the parties was that of landlord and tenant. It is an issue rarely found in cases reported in New Jersey, perhaps because it is so dependent on the facts and the fact "patterns" are often so different. However, because of the current economic recession, it is an issue that deserves reconsideration.
If the relationship of landlord-tenant was not the dominant relationship here, then jurisdiction did not exist for the entry of a judgment for possession in this summary dispossession action. I find that jurisdiction did not exist and hereby vacate the judgment for possession heretofore entered and recall the warrant for removal.
Plaintiff is essentially a solely-owned corporation and shall be referred to herein as though it were an individual.
Plaintiff, having been looking for properties advertised as in foreclosure and finding the subject property listed, approached defendants for the purpose of "saving the property from foreclosure." He explained to defendants that he would buy the property [a single-family residence in West Orange], lease it *489 back to defendants, and give defendants an option to buy it back within one year. Defendants agreed to plaintiff's overall proposal, and plaintiff had his attorney prepare a contract of sale (defendants to plaintiff); a lease back to defendants for one year; an option whereby defendants could repurchase the property; a memorandum of option in recordable form; a quitclaim deed (defendants to plaintiff); and a contract for the repurchase of the property by defendants. These documents were subsequently revised. All of the revisions are not necessary for this opinion, except to state that the lease gave defendants an option to renew it for one additional year at a cost of $10,000 with an increase in rent for the second year. The lease also provided for a cost for the option to repurchase. A formula was provided for the repurchase, and it appears to have included an excess (i.e., "profit" to plaintiff) of $30,000 if title was repurchased.
At the closing on August 4, 1987, all of these documents as finally drafted were signed, including a bargain and sale deed from defendants. Both parties were represented in the document negotiations and at the closing by attorneys of their own choice.
Defendants, not having exercised their option to purchase within the first year, exercised their option to renew the lease, and paid the $10,000 therefor. That renewal period expired on July 31, 1989 without the option to repurchase having been exercised.
Plaintiff recorded the quitclaim deed (from defendants to plaintiff) on October 16, 1989.
On June 20, 1990, plaintiff's attorney wrote to defendants, reciting that the lease had expired and that they were in possession as month-to-month holdover tenants. That letter included a notice to quit and demand for possession as of July 31, or in the alternative defendants were offered a new lease. The proposed lease, on a month-to-month term, called for an increased rent with defendants liable for the cost of utilities. *490 Plaintiff was responsible for property taxes and assessments, and of course the mortgage payments. This lease included no option to purchase. Defendants did not sign the lease, but continued in possession.
Defendants never paid the proposed rent (or any portion thereof) and went into default. Plaintiff filed the within summary action for possession under N.J.S.A. 2A:18-61.1a (nonpayment of rent). Defendants appeared on the adjourned return date, and the parties signed a stipulation of settlement. It recited an acknowledged indebtedness of $24,843.45 and called for payments of $5,000 that day and $19,843.45 two days later. The $5,000 payment was dishonored; defendants had insufficient "cleared funds." Plaintiff thereupon filed an affidavit reciting the settlement and breach, and obtained a judgment for possession and warrant for removal, ex parte. Judgment was entered without the matter having come to the attention of any judge. Plaintiff was represented in the tenancy matters by the same attorney. Defendants had no attorney in the tenancy matters until they were served with the warrant for removal. They then retained new counsel who moved for an order to show cause why the judgment should not be vacated for lack of jurisdiction. Testimony was presented on the return date of that order, essentially relating to the issue of jurisdiction. This opinion is based on that testimony and the affidavits and exhibits presented on the contested application for the order.

Discussion of Law and Conclusions.
I find it inescapable that originally the parties contemplated that their transaction was a method of temporary refinancing and that both parties contemplated that defendants would "re-purchase" the property. The relationship of landlord and tenant was incidental to that mutual and dominant contemplation.
Testimony was presented on the return of the order to show cause on a single issue and without any opportunity to engage *491 in discovery. The true consequences and evaluation of the parties' conduct shall have to await a plenary trial.
My conclusion (i.e., temporary financing transaction rather than landlord-tenant relationship) results from several factors. Most significant is the common intention expressed by the parties; defendants wanted to save their home from foreclosure and plaintiff approached them to help them save it from foreclosure. There was no suggestion that plaintiff approached defendants in order to rent the home that defendants then owned to them.
Secondly, the abundance of documents show that a transaction far more complicated than a lease was involved. Although a lease was one of the documents, it was subordinate to the intention of the parties, rather than the motivation or dominant factor in the transaction. It was a course on the road to their true destination.
Additionally, it was not until after the first two years of the relationship that plaintiff proposed a lease that: (a) would not include the option to purchase, and (b) called for a security deposit. (Apparent violations of the landlord-tenant laws (such as the payment for renewal, see N.J.S.A. 2A:18-61.3(a)) are immaterial on the instant issue, especially since I have found that a landlord-tenant relationship was not the dominant one. At best for plaintiff, these apparent violations are further evidence of the subordinate nature of the tenancy.) However, both factors indicate that plaintiff did not consider the initial transaction as creating essentially a tenancy. Consistent with these considerations is the fact that defendants refused to sign this last proposed lease.
Substance must control the form. "If there is a large down-payment and a substantial equity build up, a court should not permit such a sales agreement to be transformed into a landlord-tenant lease in a case of default or breach." Meiser, Tenant-Landlord Law in New Jersey (ICLE 1978) at 119-121. Although the quote refers to installment sales agreements, it is *492 equally applicable to a sale, leaseback, option-to-purchase transaction as well, inasmuch as the substance prevails.
See also Cahayla v. Saikevich, 119 N.J. Super. 116, 290 A.2d 311 (Cty.Dist.Ct. 1972) on this issue, as between tenants by the entirety and a tenant of one of them, and Plaza Road Co-op, Inc. v. Finn, 201 N.J. Super. 174, 492 A.2d 1072 (App.Div. 1985) as to a co-op shareholder in possession not being subject to summary dispossess proceedings because the dominant relationship is not that of landlord and tenant. Id. at 181, 492 A.2d 1072.
The rationale was spelled out in Carr v. Johnson, 211 N.J. Super. 341, 511 A.2d 1208 (App.Div. 1986) as follows:
The Legislature did not intend for the Special Civil Part (as successor to the County District Court) to determine disputed land titles and complex equitable issues in the context of a landlord-tenant dispossess action, 18 N.J.Practice, supra, § 1560 at 296, since it is a summary proceeding in which discovery is not permitted.... [W]hile such a court "... may hear equitable defenses and entertain equitable concepts, it is beyond the power of that court to grant permanent injunctive or other equitable relief to these parties as may appear just and appropriate under the circumstances presented." Morrocco v. Felton, 112 N.J. Super. 226, 230-231 [270 A.2d 739] (Law Div. 1970)....
Because these limitations are imposed, N.J.S.A. 2A:18-60 provides for transfer of such cases from a court of limited jurisdiction to the Superior Court.
....
The issues here were complex enough to require pretrial discovery to develop evidence concerning the relationship between these parties such as the amount of money paid by Carrie, the reasons for those payments, their relationship to the amount of taxes and full revelation of the circumstances leading up to the conveyance to Mary. [at 347, 511 A.2d 1208]
Carr also observed that the court should make the transfer sua sponte pursuant to R. 1:13-4(a) in an appropriate case where the defendant does not move under the statute. Id. at 349, 511 A.2d 1208.
The substance, the essential nature, the dominant purpose of this transaction, has been spelled out above. Legal title being in plaintiff while defendants were in possession was incidental to the transaction. It was subordinate to the actual intent and contemplation of the parties and was intended to have been *493 temporary. Inter se, the parties did not expect title to be "really" in plaintiff. Certainly plaintiff would have no right to the summary dispossession of defendants without "real" title.
Although the transaction took a substantially different (but likewise complex) form from that in Humble Oil & Refining Co. v. Doerr, 123 N.J. Super. 530, 303 A.2d 898 (Ch.Div. 1973), one of the findings there applies here as well: "In this sense the lease transaction was an equitable mortgage...." Id. at 551, 303 A.2d 898. That being so, the judgment for possession is hereby voided and the warrant of removal is hereby recalled. I will sua sponte prepare an order for the transfer of this action to the Law Division (with its consequent equitable powers) so that the parties may expand the pleadings and engage in discovery. The determination of the consequences of the transaction and a thorough exploration of the payments involved are not appropriate in a summary action; it is appropriate for the Law Division. The transfer and enlargement of the pleadings will deny a possibility of conflicting decisions, will eliminate a needless duplication of judicial efforts, and will promote a savings of time, cost and effort. Morrocco v. Felton, 112 N.J. Super. 226, 233, 270 A.2d 739 (Law Div. 1970); R. 1:1-2.
Notwithstanding resolution of the issue above, I consider it appropriate to note one additional factor which appeared in this matter; the purported settlement of the eviction action culminating in a judgment for possession. As noted above, the eviction action was "settled" by the parties. It is a strong public policy in New Jersey to encourage the settlement of claims. Pascarella v. Bruck, 190 N.J. Super. 118, 124-125, 462 A.2d 186 (App.Div. 1983). Consequent with that public policy, the courts should enforce settlements absent a demonstration of fraud or other compelling circumstances. As noted in Jannarone v. W.T. Co., 65 N.J. Super. 472, 477, 168 A.2d 72 (App.Div. 1961), enforcement is subject to the discretion of the court. The compelling circumstance requiring the exercise of my discretion in avoiding the settlement is that by consequence *494 otherwise, enforcement would appear to confer jurisdiction where it did not exist. Jurisdiction not existing ab initio, the parties cannot vitalize it by consent.
In any event, based on the testimony on the return date of the order and the affidavits and exhibits submitted on the application for the order, I also find that defendants signed the stipulation of settlement for the same reason that they entered into the subject transaction  they had their "backs up against the wall." They had to sign or they would be evicted  the same as in the foreclosure action. Economic necessity is often the parent of ruinous concessions. See Humble Oil, supra, 123 N.J. Super. at 547, 303 A.2d 898. This defense to the settlement, and the whole equitable concept, may be appropriate for exploration in the Law Division; they certainly are not appropriate for a summary dispossess action.[1]
NOTES
[1] I hasten to add that although the above transaction came to the court dressed in one particular type of package, the judges sitting in summary actions for possession must be vigilant to note the many varieties in which these matters may be presented. Another may be a mortgage to plaintiff coupled with a lease, or an infinite variety otherwise. The common thread is that defendant formerly owned the property, or perhaps gave a sizeable downpayment on an option to purchase, or the like. They are usually designed (at least by a plaintiff) to give the appearance that the parties intended the landlord-tenant relationship to be the dominant relationship.

These "packages" are apparently proliferating because of advertised promotions, for example, to buy real estate with no money down or the like, coupled with the current recession. All of the "angels" offering to help financially beleaguered owners do not necessarily have "tarnished halos"; some may possibly act from beneficient motives. However, the unravelling of some of these transactions, and the determination of the equitable considerations, is not appropriate in summary dispossession actions, in my opinion.