**FAMILY KINGDOM, INC., Appellant,**

v.

**EMIF NEW JERSEY LIMITED PARTNERSHIP, Appellee.**

**In re FAMILY KINGDOM, INC., Debtor.**

No. CIV. A. 98–1704.
Bankruptcy No. 97–61137.

United States District Court,
D. New Jersey.

April 29, 1998.

---

Arthur J. Abramowitz, Davis, Reberkenny & Abramowitz, P.C., Cherry Hill, NJ, for Debtor and Appellant, Family Kingdom, Inc.

John T. Carroll, III, Swartz, Campbell & Detweiler, Mt. Laurel, NJ, and Brett D. Anders, Lathrop & Gage L.C., Kansas City, MO, for Appellee, EMIF New Jersey Limited Partnership.

## OPINION

ORLOFSKY, District Judge.

In connection with its appeal and pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, Debtor–Appellant, Family Kingdom, Inc., has moved for a stay pending appeal of the Bankruptcy Court's denial of a motion to assume a lease with respect to certain real property in Wildwood, New Jersey. While the majority of the arguments advanced on appeal are not likely to succeed, I conclude that Family Kingdom, Inc., is likely to succeed in showing that the Bankruptcy Court erred in disposing of its estoppel claim. In particular, it is likely to show on appeal that Judge Wizmur erred in holding that no estoppel was possible where the lease was not ambiguous. Because of the substantial harm to Family Kingdom, Inc. which would result absent a stay, and the minimal, if any, harm which would result to EMIF if a stay is granted, and because the public interest favors a stay, I will grant the motion for a stay pending appeal, and vacate Judge Wizmur's order denying the stay pending appeal.

## I. Facts and Procedural History

Debtor–Appellant, Family Kingdom, Inc. ("Family Kingdom"), operates an amusement theme park on Hunt's Pier in Wildwood, New Jersey under the name Dinosaur Beach. Certification of Anthony Catanoso ¶ 2 (dated March 1998) (hereinafter Catanoso Certif.). The owner of Hunt's Pier is Appellee, EMIF New Jersey Limited Partnership ("EMIF"). *See* Affidavit of Jeff Johnson ¶ 2 (dated Jan. 22, 1998) (hereinafter Johnson Aff). Beginning on January 1, 1996, EMIF leased the pier to Family Kingdom. *See* Catanoso Certif. at ¶ 8 & Exh. A; Johnson Aff. at ¶ 4 & Exh. A (Lease between EMIF New Jersey Limited Partnership and Family Kingdom, Inc. (dated Jan. 1, 1996) (hereinafter the "Lease")). On May 22, 1996, the Lease was modified in several respects. *See* Catanoso Aff. at ¶ 16 & Exh. B. At that time, the parties agreed that "[t]he Lease and [the] Modification of Lease Agreement constitutes [sic] the entire agreement between the parties regarding the matters set forth herein and supersede all prior written understandings and agreements, whether written or oral, between the parties relating to the amount that [EMIF] shall pay for the costs of certain Work described herein" and that, except to effect the terms of the modification, "all of the terms, conditions, covenants and provisions of the Lease shall remain unmodified and in full force and effect in accordance with their original terms." *Id.*, Exh. B at §§ 4–5.

After an initial letter notifying Family Kingdom that it had defaulted on its obligations under the Lease, *see* Johnson Aff., Exh. E, on June 10, 1997, EMIF wrote to Family Kingdom, *inter alia,* claiming that several Events of Default, within the meaning of section 22 of the Lease, had occurred. Of particular relevance to this action, EMIF claimed that Family Kingdom had failed to pay Basic Rent, as defined by the Lease, in 1996. Accordingly, pursuant to section 23 of the Lease, EMIF elected to terminate the Lease. *See* Affidavit of Stephen Hankin ¶ 5 (dated Feb. 4, 1998) (hereinafter Hankin Aff.)

& Exh. A.[1]

On June 13, 1997, Family Kingdom responded by disputing EMIF's contention that Family Kingdom was in default. *Id.* at ¶ 5 & Exh. B. On June 23, 1997, EMIF acknowledged, but ultimately still disagreed with, Family Kingdom's position regarding default, and asserted that, if there indeed had been no default (and accordingly, no proper termination), EMIF specified August 1, 1997 and September 5, 1997, as the dates on which certain monies were due pursuant to section 23(c)(i) of the Lease. Johnson Aff, Exh. D. On July 22, 1997, EMIF informed Family Kingdom that, even if Family Kingdom's position with respect to the default were correct, Family Kingdom was obligated to pay certain monies to EMIF on July 15, 1997 pursuant to section 6(a) of the Lease. Because those monies had not been paid, EMIF asserted that this non-payment was an alternative basis for finding an Event of Default and, accordingly, an alternative basis upon which to terminate the Lease. *Id.*, Exh. G.

On September 10, 1997, based on Family Kingdom's failure to make the August 1, 1997, and September 5, 1997, payments, and assuming, *arguendo,* the propriety of Family Kingdom's original position with respect to default and termination, EMIF again terminated the Lease. *Id.*, Exh. I. Finally, EMIF eventually reiterated the position it had articulated on July 22, 1997, with respect to monies it claimed were due on August 15, 1997 and September 15, 1997, again claiming a default and terminating the Lease. *Id.*, Exh. H, J.

At some point in early September, EMIF filed an action for summary dispossession against Family Kingdom in the Superior Court of New Jersey, Atlantic County, Law Division, Special Civil Part, *EMIF v. Family Kingdom, Inc.,* ATL–LT–4205–97.[2] Pursuant to N.J.S.A. 2A:18–60, which allows for removal from the Special Civil Part to the Law Division "at any time before an action for the removal of a tenant comes on for trial," N.J.S.A. 2A:18–60, Family Kingdom moved to transfer the case to the Law Division. On November 10, 1997, Judge Michael Winkelstein denied the motion. *See* Johnson Aff., Exh. L, Exh. K at 64–65. On December 19, 1997, the Appellate Division of the Superior Court, in a one-page order and without discussion, reversed Judge Winkelstein's determination that the case should not be transferred to the Law Division and so transferred the case. *Id.*, Exh. M.[3]

On December 18, 1997, Family Kingdom filed its Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. On February 9, 1998, pursuant to Rules 9014 and 6006(a) of the Federal Rules of Bankruptcy Procedure, Family Kingdom moved to assume the Lease between Family Kingdom and EMIF under 11 U.S.C. § 365(a).

Section 365(c) provides that:

The trustee *may not assume* or assign *any executory contract or unexpired lease* of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

. . . .

(3) such lease is of nonresidential real property and *has been terminated under applicable nonbankruptcy law prior to the order for relief.*

11 U.S.C. § 365(c) (emphasis added).[4] Accordingly, the central issue presented to Judge Wizmur on Family Kingdom's motion to assume the Lease was whether the Lease

---

1. In discussing the likelihood of success on the merits, I describe in greater detail the applicable provisions of the Lease.

2. Summary dispossession is a remedy created by N.J.S.A. 2A:18–53 and allows tenants to be removed from leased premises under various circumstances, among them, where the tenant "hold[s] over after a default in the payment of rent." N.J.S.A. 2A:18–53(b). Such actions may be brought in the Superior Court, Law Division, Special Civil Part. N.J.S.A. 2A:18–53.

3. On the standards for transfer from the Special Civil Part to the Law Division, see generally *Lopez v. Medina,* 262 N.J.Super. 112, 119–122, 619 A.2d 1340 (1992) (discussing *Ivy Hill Park Apartments v. GNB Parking Corp.,* 237 N.J.Super. 1, 566 A.2d 820 (App.Div.1989)); *see also Carr v. Johnson,* 211 N.J.Super. 341, 511 A.2d 1208 (App.Div.1986); *Morrocco v. Felton,* 112 N.J.Super. 226, 270 A.2d 739 (Law Div.1970).

4. While section 365 allows the trustee to assume unexpired, unterminated leases, in a Chapter 11 case, the debtor in possession may, in general and subject to certain exceptions not applicable

had been properly terminated under applicable nonbankruptcy law prior to the order for relief. Affidavit of Arthur J. Abramowitz (dated Mar. 31, 1998), Exh. A at 44–47 (Transcript (dated Feb. 9, 1998)) (hereinafter Trans.)). For "if a lease of nonresidential property has been terminated under state law before the filing of a bankruptcy petition, there is nothing left for the trustee to assume." *See In re Bryant Universal Roofing, Inc.*, 218 B.R. 948, 1998 WL 112577 (Bankr. D.Ariz.1998); *see generally In re DiCamillo*, 206 B.R. 64, 68 (Bankr.D.N.J.1997) (Wizmur, B.J.) (discussing distinction between expired and terminated leases and noting that "nonresidential tenant/debtor may assume an unexpired lease, but only if the lease has not been terminated pre-petition under state law").

Judge Wizmur determined that an appropriate termination of the Lease occurred on June 10, 1997, and therefore, denied Family Kingdom's motion to assume the Lease. Trans. at 44, 46–47. She then denied Family Kingdom's motion for a stay pending appeal, finding that there was no likelihood of success on the merits of its appeal of the denial of the motion to assume the Lease, although she did note the substantial harm that would come to the Debtor if the stay were not granted. *Id.* at 48–49; see also Order (dated Mar. 3, 1998).[5]

## II. Standard of Review of Bankruptcy Court Order

■ In reviewing the orders of the bankruptcy court, findings of fact are reviewed under a "clearly erroneous" standard, and conclusions of law are reviewed *de novo*. *See* Fed.R.Bankr.P. 8013; *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y.1995); *In re Blackwell*, 162 B.R. 117, 119 (E.D.Pa.1993). Parties seeking a stay pending appeal of an order of the bankruptcy court "must ordinarily [apply] to the bankruptcy judge in the first instance." Fed.R.Bankr.P. 8005. Only then may a party move for a stay in the district court, provided that "the motion [shows] why the relief ... was not obtained from the bankruptcy judge." *Id.* Such a stay is designed to "protect the rights of all parties in interest." *Id.; see In re Mocco*, 176 B.R. 335, 339–40 (Bankr.D.N.J.1995).

■ In order to determine whether to grant a stay pending appeal, a district court considers the following factors: 1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury if the stay is not granted; 3) whether a stay would substantially harm other parties in the litigation; 4) whether a stay is in the public interest. *See, e.g., Green Point Bank*, 188 B.R. at 11; *In re Sharon Steel Corp.*, 159 B.R. 730, 733 (Bankr.W.D.Pa.1993); *accord In re Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1300–01 (7th Cir.1997); *In re T.R. Acquisition Corp.*, 208 B.R. 635, 636 (S.D.N.Y. 1997); *In re St. Mary Hosp.*, 157 B.R. 235, 237 (E.D.Pa.1993).[6]

---

here, exercise the rights that the trustee otherwise would exercise. *See* 11 U.S.C. § 1107(a).

**5.** There may be other reasons why the Lease could not be assumed under section 365, specifically, the requirements under section 365(b) that the debtor provide certain adequate assurance of future performance under the Lease and/or cure past defaults. Judge Wizmur did not address those issues as she considered them to be premature, *see, e.g.,* Trans. at 40, and rightly so. Accordingly, they are not relevant to the motion for a stay pending appeal, notwithstanding EMIF's comments to the contrary. *See* EMIF's Opposition to Debtor's Motion for Stay Pending Appeal 6–7 (dated Apr. 14, 1998) (hereinafter EMIF's Opposition Brief). Should Family Kingdom's appeal prove successful, on remand, Judge Wizmur may again determine that the Lease is not assumable because of the requirements of section

365(b). I intimate no view on the merits of that issue.

**6.** Family Kingdom has suggested that the "likelihood of success" factor may be "relaxed" where the party moving for the stay has made affirmative showings on the three other factors. *See* Family Kingdom's Memorandum of Law in Support of Motion for Stay Pending Appeal 2 (dated Mar. 31, 1998) (hereinafter Family Kingdom's Memorandum of Law). While this may be the rule with respect to preliminary injunctions in the Tenth Circuit, *see, e.g., In re Yellow Cab Cooperative Assoc.*, 192 B.R. 555, 557 (D.Colo. 1996); *see also Longstreth v. Maynard*, 961 F.2d 895, 903 (10th Cir.1992), cert. denied, 510 U.S. 895, 114 S.Ct. 260, 126 L.Ed.2d 212 (1993); *In re MacDonald/Assoc. Inc.*, 54 B.R. 865, 870 (Bankr.D.R.I.1985) (citing *Community Communications Co., Inc. v. City of Boulder*, 660 F.2d 1370

## III. Discussion

### A. Likelihood of Success on the Merits

Family Kingdom's position on appeal is basically as follows: 1) the language of the Lease is ambiguous; 2) discovery as to how the parties conducted themselves under the Lease would show the Lease to be ambiguous and would allow Family Kingdom to vindicate its position as to how the Lease should be interpreted; 3) discovery would reveal that EMIF should be estopped from terminating the Lease; 4) discovery would provide evidence that the Lease was modified by the parties. *See generally* Family Kingdom's Brief on Appeal 10–18 (dated Apr. 16, 1998) (hereinafter Family Kingdom's Appeal Brief). I will review these arguments *seriatim*, and conclude that on most of Family Kingdom's grounds for appeal there is no likelihood of success as these grounds are either wrong as a matter of contract law, or irrelevant. On one ground, however, Family Kingdom's estoppel theory, there is a likelihood of success, although perhaps not in the way in which Family Kingdom has advanced this argument.

### 1. Proper Termination of the Lease by EMIF

One of the occurrences which constituted an Event of Default under the Lease was "a failure by [Family Kingdom] to make any payment of any Monetary Obligation, regardless of the reason for such failure." Lease at § 22(a)(1). There was no period during which Family Kingdom could cure a default under section 22(a)(1). *Id.* at § 22(b). Upon the occurrence and continuation of an Event of Default, EMIF retained the right, *inter alia*, to terminate the Lease. *Id.* at § 23(a).

Among the Monetary Obligations included in the Lease is Rent. *Id.* at § 2. Rent, in turn, includes Basic Rent, Percentage Rent, and Additional Rent. It is Family Kingdom's obligation to pay Basic Rent which is at issue here. The obligation to pay Basic Rent is created by section 6(a) which provides in relevant part:

> From any Net Revenues, and before the payment of any debt service on Ride Equipment Debt or any management fee, [Family Kingdom] shall pay to [EMIF], as annual rent for the Leased Premises during the Term, the sum of $150,000.00 for the first Lease Year, and $300,000.00 for Lease Years thereafter (*"Basic Rent"*). Basic Rent shall be paid for each Lease Year in three equal installments on the fifteenth (15th) day of the months of July, August, and September during the Term (each such day being a *"Basic Rent Payment Date"*).

*Id.* at § 6(a) (emphasis in original).[7] Family Kingdom's position with respect to this key language in the Lease, articulated continuously during the hearing before Judge Wizmur, is that if there are no Net Revenues, no obligation to pay Basic Rent arises. *See, e.g.,* Trans. at 6, 10–17, 20–21.

(10th Cir.1981), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982)), this is not the rule for preliminary injunctions in the Third Circuit, *see, e.g., Schulz v. United States Boxing Ass'n,* 105 F.3d 127, 131 n. 6 (3d Cir. 1997); *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 90–91 (3d Cir.1992); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197 (3d Cir.1990); *Hill Int'l v. Nat'l R.R. Passenger Corp.,* 957 F.Supp. 548 (D.N.J.1996). Nor is this the rule in the Third Circuit for stays of bankruptcy court orders pending appeal.

Indeed, not only is the "relaxation principle" not the law in the Third Circuit or in the majority of circuits, some courts have held that "in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a *stronger* threshold showing of likelihood of success to meet [its] burden." *See, e.g., Forty–Eight Insulations,* 115 F.3d at 1301 (emphasis added).

I do not, however, adopt the "strong likelihood" formulation.

Finally, it is not even clear that the "relaxation" of the likelihood of success is the rule in the Tenth Circuit. *See, e.g., In re Fremont Sheep Co.,* 110 F.3d 73, 1997 WL 174116, *2 (10th Cir. Apr. 10, 1997) (noting that to obtain a stay pending appeal, a party must establish a "strong likelihood of success on the merits" and denying stay as a result of applicant's failure to show such likelihood).

7. Net Revenues are defined as "all Gross Receipts from the operation of the Leased Premises for any period less all Expenses incurred by [Family Kingdom] in connection with operation of the Leased Premises for such period." Lease at § 3.

The first sentence of section 6(a) was eventually modified to alter only the amount of Basic Rent payable in the first Lease Year and thereafter. *See* Catanoso Aff., Exh. B at § 2(b).

Judge Wizmur held that Family Kingdom's interpretation of the Lease could not be sustained in light of section 22(c) of the Lease. *See* Trans. at 43. That section provides:

Whenever in this Lease any amount is designated to be paid from any particular source of funds, then [Family Kingdom] shall look solely to that source of funds for payment of such amount, and neither [Family Kingdom] nor any officer, director, shareholder, employee or agent shall be personally liable for such amount if the source identified is insufficient to provide such amount. Notwithstanding this provision, the insufficiency of such identified source shall not be a defense to failure to pay such required amount and failure to pay shall be or may be an Event of Default under this Lease, subject to all remedies and relief provided for herein.

Lease at § 22(c). Judge Wizmur held that from this language it was "inescapable that what was intended was a resort to the only source of revenues—net revenues—generated from the operation of [Family Kingdom]; that those were the source of revenues but not the determinant of whether an event of default, and therefore, termination could occur." Trans. at 43.

 I review Judge Wizmur's legal conclusions *de novo* and agree with her interpretation of the Lease. The language of section 6(a) cannot be reasonably read to suggest that there is no obligation to pay Basic Rent if there are no Net Revenues. All the language "From any Net Revenues" does is to specify a source from which Basic Rent would be paid. Furthermore, section 22(c) confirms that the parties might specify a particular source of funds from which a Monetary Obligation was to be satisfied without excusing ("shall not be a defense to failure to pay") the payment of that Monetary Obligation because that source of funds did not exist or was insufficient to satisfy the Monetary Obligation. Section 22(c) and section 6(a) work hand-in-hand. Thus, even if there were no Net Revenues, *i.e.*, Net Revenues

were completely insufficient to pay Basic Rent, Family Kingdom has no defense to its failure to pay Basic Rent.

Finally, confirming this interpretation of when and how Monetary Obligations arise under the Lease is section 23(c) of the Lease. This section provides a modicum of protection to Family Kingdom if it could not satisfy a certain percentage of its Monetary Obligations. Section 23(c) provides, in relevant part:

(i) In the event for the first Lease Year Gross Receipts provide funds sufficient to pay at least seventy-five percent (75%) but less than all Monetary Obligations, if no other Event of Default then exists *EMIF will advance any unpaid Impositions [8] or permit such Impositions to remain unpaid until the next Lease Year and will defer receipt of that portion of any Monetary Obligations that cannot be paid from available Net Revenues until a date or dates in the next Lease Year specified in notice to [Family Kingdom].* Any such unpaid or advanced Impositions shall be treated as an addition to Impositions for the next Lease Year during the Term, to be paid out of Gross Receipts before the payment of any Rent, and *any other advanced on unpaid Monetary Obligations shall be treated as Basic Rent for the next Lease Year during the Term*, to be paid out of Gross Receipts after the payment of any Impositions and before payment of any other amounts otherwise payable under this Lease.

(ii) In the event that for the first Lease Year Gross Receipts do not provide funds sufficient to pay at least seventy-five percent (75%) of all Monetary Obligations, or *if for any other Lease Year during the Term Gross Receipts do not provide funds sufficient to pay all Monetary Obligations in full, then at [EMIF's] sole election and without the obligation to act in good faith, ·[EMIF] may advance any unpaid Impositions or permit such Impositions to re-*

---

**8.** Impositions are defined in section 9(a) of the Lease to include "all charges for any easement or agreement maintained for the benefit of the Leased Premises, all assessments and levies, all permit, inspection and license fees, all rents and charges for water, sewer, utility and communications services relating to the any [sic] of Leased Premises, and all other public charges." Lease at § 9(a).

*main unpaid until the next Lease Year, and may agree to advance or defer receipt of such Monetary Obligations* until a date specified in notice to [Family Kingdom]. Any such unpaid or advanced Impositions shall be treated as an addition to Impositions for the next Lease Year during the Term, to be paid out of Gross Receipts before the payment of any Rent, and *any other advanced on unpaid Monetary Obligations shall be treated as Base Rent[9] for the next Lease Year during the Term,* to be paid out of Gross Receipts after the payment of any Impositions and before payment of any other amounts otherwise payable under this Lease. All Rents deferred under this Paragraph and all other Monetary Obligations advanced by EMIF under this Paragraph shall bear interest as set forth in Paragraph 7.

*Id.* at § 23(c) (emphasis and footnotes added). This provision makes quite clear that if Family Kingdom did not have sufficient Net Revenues from which to satisfy its Basic Rent obligations, including the situation where Family Kingdom had *no* Net Revenues, it was possible under the Lease for unpaid Basic Rent to be deferred. There is, however, simply no suggestion in this language, or in any other language, that there is no obligation to pay Basic Rent or that the payment of Basic Rent would be completely excused when Family Kingdom had no Net Revenues.

Indeed, where the parties wanted to provide that no obligation to pay arises when a specified sum is insufficient, they knew how to do so. For example, in section 7(a), the Lease provides:

[Family Kingdom] shall pay and discharge, as additional rent (collectively, *"Additional Rent"*):

. . . .

(iii) interest at the rate (the *"Default Rate"*) of eighteen percent (18%) per annum on the following sums until paid in full: (A) all overdue installments of Basic Rent from the due date thereof *if Net Revenues are available to pay same;* (B) all overdue installments of Percentage Rent from the due date thereof *if Adjusted Net Revenues are available to pay same;* and (C) *if Net Revenues were available to pay same when required to be paid,* all overdue amounts of Additional Rent relating to Impositions which [EMIF] shall have paid on behalf of [Family Kingdom], from the date of payment thereof by [EMIF].

*Id.* at § 7(a) (emphasis added).

In short, the Lease is in no way ambiguous about Family Kingdom's obligation to pay Basic Rent and Family Kingdom has shown no likelihood of success in demonstrating that it is.[10] For failing to pay Basic Rent, EMIF was entitled to and did effectively terminate the Lease on June 10, 1997. Family Kingdom has demonstrated no likelihood of success in showing that the Lease was not properly terminated under applicable non-bankruptcy law, *see* 11 U.S.C. § 365(c)(3), in this case, New Jersey law, *see* Lease at § 32(j).[11]

■ Family Kingdom's second assertion on appeal—that discovery as to the conduct of the parties would allow Family Kingdom to show that the Lease is ambiguous and to vindicate its interpretation of the Lease—is

9. Base Rent is not defined in the Lease. There is, however, no reasonable way to interpret this phrase other than as a reference to Basic Rent, one of the key concepts in the Lease, notwithstanding Family Kingdom's suggestions to the contrary. *See* Trans. at 22–23, 39.

10. Having found no ambiguities in the Lease, I need not consider that section of the Lease which provided that "the Lease shall be construed without regard to the rule that ambiguities in a document are to be construed against the drafter." Lease at § 34(e).

11. In letters following June 10, 1997, EMIF asserted other grounds for termination of the Lease. *See* Johnson Aff., Exh. GJ. Because the effectiveness of subsequent letters in terminating the Lease was not an issue before Judge Wizmur, I need not reach the question of whether these letters sufficed to properly terminate the Lease. Of course, if Family Kingdom's appeal is successful, on remand, Judge Wizmur may determine that these letters, all of which were which sent pre-petition, terminated the Lease, and accordingly, may again conclude that the Lease may not be assumed. I express no view on this issue.

beside the point. Extrinsic evidence is allowed only where the Lease itself is ambiguous, not to prove that the Lease is ambiguous, or to alter or contradict the express terms of the Lease. *See, e.g., Hall v. Board of Ed. of Jefferson,* 125 N.J. 299, 305, 593 A.2d 304 (1991) ("If contract terms are unspecific or vague, extrinsic evidence may be used to shed light on the mutual understanding of the parties."); *Dontzin v. Myer,* 301 N.J.Super. 501, 507, 694 A.2d 264 (App.Div. 1997) (holding that "so far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant" and citing *Casriel v. King,* 2 N.J. 45, 50, 65 A.2d 514 (1949)); *Saul v. Midlantic Nat'l Bank/South,* 240 N.J.Super. 62, 77, 572 A.2d 650 (App.Div.), *certif. denied,* 122 N.J. 319, 585 A.2d 338 (1990). Thus, the discovery which Family Kingdom contends is necessary would be irrelevant, even if it would demonstrate what Family Kingdom suspects it might. Accordingly, this argument on appeal has little likelihood of success.

### 2. Estoppel and Termination of the Lease

■ Family Kingdom's third argument on appeal is that discovery would reveal that EMIF should be estopped from terminating the Lease. Even if the Lease is not ambiguous, it is still possible for EMIF to be estopped from terminating the Lease; as a matter of contract law, estoppel, waiver, and contractual ambiguity are completely separate issues. *See, e.g., County of Morris v. Fauver,* 153 N.J. 80, 102, 707 A.2d 958, 968 (1998); *Selective Builders, Inc. v. Hudson City Savings Bank,* 137 N.J.Super. 500, 505 nn.2–3, 349 A.2d 564 (Ch.Div.1975). There is nothing inconsistent about considering extrinsic evidence for the purpose of proving estoppel as a defense to the enforcement of

certain provisions of a contract, while at the same time not allowing extrinsic evidence to contradict the unambiguous language of a contract. Thus, despite the unlikelihood of success in showing that the Lease is ambiguous, *see* Part II.A.1, *supra,* Family Kingdom theoretically *could* show that the terminated Lease should be converted into an assumable contract. *See, e.g., In re D'Lites of Am., Inc.,* 66 B.R. 558, 559–60 (Bankr.N.D.Ga. 1986) (holding that, "in rare circumstances, equitable considerations may be relied upon" to "reviv[e] leases which had, 'without question,' been validly terminated"). Judge Wizmur, however, appeared to hold that an estoppel was completely foreclosed where the Lease was unambiguous, even though she was somewhat persuaded by Family Kingdom's position that discovery was necessary on the estoppel issue. *See* Trans. at 41, 46. Because of this erroneous belief, Judge Wizmur apparently felt that she could not even consider Family Kingdom's estoppel argument and held that discovery to determine the facts supporting, *inter alia,* the estoppel argument was moot. *See* Trans. at 41; *see also id.* at 46.[12] Family Kingdom will likely demonstrate on appeal that completely foreclosing even the possibility of an estoppel was reversible error. Accordingly, Family Kingdom has demonstrated that it is likely to succeed in showing that Judge Wizmur erred in disposing of its estoppel argument.[13]

The only meaningful argument advanced by EMIF in opposition to Family Kingdom's motion for a stay pending appeal based on estoppel is its interpretation of the statements proffered by Family Kingdom in support of the estoppel argument. *See* EMIF's Memorandum at 5–6; *see also* Trans. at 32; Catanoso Certif. at ¶¶ 19–25. However, since Judge Wizmur did not consider the estoppel argument and made no findings with respect to the estoppel issue, and be-

**12.** To the extent EMIF argues that it cannot be estopped from terminating the Lease because the Lease is not ambiguous, it is also incorrect. *See* EMIF's Opposition Brief at 6; Trans. at 31.

**13.** Of course, should the appeal ultimately prove successful, Judge Wizmur on remand may determine that, as a matter of contract law, the force of sections 32(f) and 23(g) of the Lease, which I discuss below, cannot be overridden by any equi-

table estoppel which she may find. Judge Wizmur might also determine that she does not have to reach the estoppel question. That is, she may determine that even if EMIF were estopped from terminating the Lease, the other requirements of section 365 would still prevent Family Kingdom from assuming the Lease. *See* n. 5, *supra.* Once again, I intimate no view as to the merits of these issues.

cause she may consider discovery on that point necessary,[14] I need not reach the questions of, and accordingly, do not intimate any view as to whether EMIF should be completely estopped from terminating the Lease, whether EMIF should only be estopped from demanding payments of Basic Rent during certain Lease Years, or whether EMIF should be estopped at all. All that need be said at this point is that Family Kingdom is likely to prevail on its argument that Judge Wizmur erred in treating its original estoppel argument in the way she did.

### 3. Modification of the Lease

■ Family Kingdom's final position on appeal is that discovery would provide evidence that the Lease was modified by the parties. The argument appears to be that modification of a contract may occur without the mutual assent of the parties and may be implied from the conduct of the parties, and that an oral modification can override a contractual provision prohibiting oral modifications. *See* Family Kingdom's Appeal Brief at 17–18. Family Kingdom is not likely to succeed on this claim on appeal.

First, the Lease provided that:

This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought.

Lease at § 32(f). Furthermore, in discussing remedies and damages upon default, the Lease provided that:

No failure of [EMIF] (i) to insist at any time upon the strict performance of any provision of this Lease or (ii) to exercise any option, right, power or remedy contained in this Lease shall be construed as a waiver, modification, or relinquishment thereof. A receipt by [EMIF] of any sum in satisfaction of any Monetary Obligation with knowledge of the breach of any provi-

sion hereof shall not be deemed a waiver of such breach, and no waiver by [EMIF] of any provision hereof shall be deemed to have been made unless expressed in a writing signed by [EMIF].

*Id.* at § 23(g). Accordingly, in light of these provisions, Family Kingdom could not have reasonably expected that any modification which was not in the form of a writing signed by EMIF would have any effect.

■ Second, and notwithstanding sections 32(f) and 23(g), in general, a contract which New Jersey's Statute of Frauds requires to be in writing, such as a lease, *see* N.J.S.A. 25:1–12a, may not be modified by a subsequent oral agreement. *See Dworman v. Mayor & Bd. of Aldermen of Morristown,* 370 F.Supp. 1056, 1066 (D.N.J.1974); *Willow Brook Recreation Ctr., Inc. v. Selle,* 96 N.J.Super. 358, 364, 233 A.2d 77 (App.Div. 1967), *certif. denied,* 51 N.J. 187, 238 A.2d 473 (1968); *cf. Green Construction Co. v. First Indem. of Am. Ins. Co.,* 735 F.Supp. 1254, 1261 (D.N.J.1990) (discussing similar rule under New Jersey version of Uniform Commercial Code), *aff'd mem.,* 935 F.2d 1281 (3d Cir.1991). There is no suggestion in the record that any wrongful actions took place which prevented the parties from entering into a written modification of the Lease. *See, e.g., Passaic Distributors, Inc. v. Sherman Co.,* 386 F.Supp. 647, 650 (S.D.N.Y. 1974) (interpreting New Jersey law). Accordingly, even if Family Kingdom could discover conduct suggesting that the Lease was "modified," without an actual written modification signed by EMIF, there can be no modification of the Lease. Accordingly, Family Kingdom is unlikely to succeed on the merits of its claim on appeal that a modification of the Lease, implied from oral statements or from conduct, occurred.

### 4. Effect of Section 365(d)(4)

EMIF argues that section 365(d)(4) prevents Family Kingdom from assuming the

---

**14.** Judge Wizmur could allow such discovery. *See, e.g.,* Fed. R. Bankr.P. 9014 (making Fed. R. Bankr.P. 7026, 7028–37 applicable to contested matters, including, pursuant to Fed. R. Bankr.P. 6006(a), a motion to assume an unexpired lease). For example, Judge Wizmur could allow discovery for the same reason that the Appellate Division might have reversed Judge Winkelstein's

denial of the transfer to the Law Division, that is because the motion to assume the Lease "involve[s] rights or issues too important to be heard in a summary manner." *See, e.g., Carr,* 211 N.J.Super. at 347–48, 511 A.2d 1208; *see also* n. 3, *supra;* Trans. at 46 (noting that "there may be tremendous merit" to Family Kingdom's argument in favor of discovery).

Lease. Judge Wizmur did not consider the relevance of this provision of the Bankruptcy Code, and accordingly, I will not reach it on appeal, or on a motion for a stay pending appeal.

### B. Irreparable Harm to Family Kingdom Absent Stay

Family Kingdom has proffered substantial evidence of irreparable harm if the stay is not granted. Without a stay, all of Family Kingdom's substantial investments in the Pier and in rides, and its entire business would be lost, even if ultimately, the appeal is successful. *See, e.g.,* Catanoso Certif. at ¶¶ 21, 32, 34. Indeed, the showing of irreparable harm absent a stay is so substantial that EMIF did not even attempt to rebut Family Kingdom's argument. Accordingly, I find that there would be irreparable harm to Family Kingdom absent the stay pending appeal.

### C. Harm to EMIF if Stay is Granted

The only harm to EMIF which EMIF has suggested is the fact that EMIF has paid, and will continue to pay while a stay is in force, certain monies which it claims Family Kingdom should have paid. *See* EMIF's Memorandum at 8–9. First, this harm is substantially outweighed by the harm to Family Kingdom absent the stay. Second, the alleged "harm" can be remedied in the form of money damages. Third, even the Lease itself contemplates that EMIF might advance unpaid Impositions on behalf of Family Kingdom. *See* Lease at § 22(c). Finally, while there may be some delay in selling the Pier, *see* Certification of Mark Domash ¶¶ 3–4(undated) (hereinafter Domash Certif.), it does not appear that any delay will irreparably damage EMIF's ability to dispose of the Pier. Accordingly, there is minimal, if any, harm to EMIF if the stay during the relatively short time period in which the Court considers the merits of the appeal is granted.

### D. Public Interest

The public interest will be served by granting the stay pending appeal. Without a stay, Dinosaur Beach, operated by Family Kingdom, will not operate this summer and the 4,000 people who have purchased 5–season passes will have completely lost the benefit of that purchase. *See* Catanoso Certif. at ¶ 24; *see also American Tel. & Tel. v. Winback and Conserve Prog., Inc.,* 42 F.3d 1421, 1427 & n. 8 (3d Cir.1994) (noting that, as a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff), *cert. denied,* 514 U.S. 1103, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995). The only argument advanced by EMIF in support of the proposition that a stay would not be in the public interest equates its private interest with the public interest. *See* EMIF's Memorandum at 9. While this assertion has some charm, it is without force. A stay in order to determine whether Judge Wizmur's denial of the motion to assume the Lease was correct is in the public interest.

### IV. Conclusion

For the reasons set forth above, the stay pending appeal will be granted, and Judge Wizmur's order denying the stay pending appeal will be vacated. The Court will retain jurisdiction to consider the appeal on the merits. The Court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of Debtor–Appellant, Family Kingdom, Inc., Arthur J. Abramowitz, Esq., Davis, Reberkenny & Abramowitz, P.C., appearing, for a stay pending appeal of an order of the Bankruptcy Court denying the motion of Family Kingdom, Inc., to assume a lease pursuant to 11 U.S.C. § 365(c), John T. Carroll, III, Esq., Swartz, Campbell & Detweiler, and Brett D. Anders, Esq., Lathrop & Gage L.C., appearing on behalf of Appellee, EMIF New Jersey Limited Partnership; and

The Court having considered the submissions of the parties; and

For the reasons set forth in an OPINION filed concurrently with this ORDER,

IT IS HEREBY ORDERED on this 29th day of April, 1998, that the Order of the Bankruptcy Court denying the motion for a stay pending appeal is VACATED; and

IT IS FURTHER ORDERED that the motion of Debtor–Appellant, Family Kingdom, Inc., for a stay pending appeal is GRANTED.